**Johness F. SWINDLE,**
**Plaintiff–Appellant,**

v.

**Louis W. SULLIVAN, as Secretary,**
**Department of Health and Human**
**Services, Defendant–Appellee.**

No. 89–7838
**Non–Argument Calendar.**

United States Court of Appeals,
Eleventh Circuit.

Oct. 10, 1990.

Nelson Simmons, Jr., Legal Services of North–Central Alabama, Inc., Decatur, Ala., for plaintiff-appellant.

Frank W. Donaldson, U.S. Atty., Jenny L. Smith, Asst. U.S. Atty., Birmingham, Ala., Bruce R. Granger, Mary Ann Sloan, Mack A. Davis, Susan Elizabeth Henderson, Dept. of Health & Human Services, Atlanta, Ga., for defendant-appellee.

Before KRAVITCH, ANDERSON and CLARK, Circuit Judges.

PER CURIAM:

Claimant Johness Swindle filed an application for Supplemental Security Income ("SSI") Benefits in October, 1986. After her application was denied initially and on reconsideration, she requested a hearing. On October 2, 1987, a hearing was held before an Administrative Law Judge ("ALJ"), who denied her benefits in a decision dated March 30, 1988. That decision was subsequently affirmed by the Appeals Council, and Ms. Swindle filed the present action in federal district court pursuant to 42 U.S.C. § 1383(c)(3). The district court affirmed the ALJ's decision, holding that it is supported by substantial evidence and is based on proper legal standards. As explained below, we find that the ALJ's determination that Ms. Swindle's testimony regarding non-exertional limitations due to

persistent pain and dizziness was not credible is not supported by substantial evidence, and therefore we reverse and remand this case to the ALJ for further consideration in light of this opinion.

## BACKGROUND

At the hearing, Ms. Swindle testified that she was 38, has a 9th grade education, and previously worked as a waitress and a laborer in a furniture factory. (HHS Trans. at 26–27). She stopped working in September 1986. She testified that she suffers from lupus and experiences headaches, dizziness, weakness, rashes, itchiness, pain and swelling in the joints of her ankles, knees, elbows, and shoulders, soreness and pain in her feet, sleeplessness, anxiety, and depression. Ms. Swindle expressed that prednisone and benadryl decrease the itching of her rashes, and she is unaware of any side effects from her medication except that the prednisone may contribute to her headaches. (*Id.* at 28–32). She felt that she was disabled because of feeling dizzy, like she was "going to pass out," and because the pain and soreness in her feet prevented her from standing long enough to work. (*Id.* at 32).

The medical evidence showed that in 1985, Dr. Rodney Morris, Ms. Swindle's treating physician from July 1985 through February 1987, diagnosed her as having systemic lupus erythematous with positive rheumatoid factor and two positive ANA's, and angina pectoris. (*Id.* at 88–99, 114). Dr. Morris's notes also indicated that he consistently treated Ms. Swindle with various medications for pain, itching, and other lupus-related symptoms. (*Id.* at 76–89, 101–02).

In October of 1985, Dr. Macon Phillips, a consulting physician and rheumatology specialist, observed that Ms. Swindle's symptoms included rashes, pleuritic chest pain, arthralgia, swelling, morning stiffness, drying of the eyes, and some generalized weakness. Dr. Phillips found full range of motion in her joints, and no synovitis. (*Id.* at 114–15). In December 1985, following various tests, Dr. Phillips opined that Ms. Swindle had Sjogren's syndrome and suspected that her nodules represented vasculitis. Dr. Phillips further opined that "patients with Sjogren's often overlap rheumatoid arthritis and systemic lupus." (*Id.* at 110).

From August through November 1987, Ms. Swindle was treated three times in hospital emergency for numbness and burning sensation in the left leg, chest pains, headaches, nerves and pressure in the head. (*Id.* at 104–09).

In January 1988, Dr. Jan Dohlman, an evaluating physician, indicated that Ms. Swindle was healthy until two years previously, when she developed a purpuric rash, painful feet, and positive blood tests consistent with lupus. (*Id.* at 117). Dr. Dohlman stated that Ms. Swindle was treated with prednisone and responded well, but in late 1987, she developed numbness in her left lateral calf and foot, recurrence of rash, fatigue, nausea, hair loss, and arthralgia. Ms. Swindle was placed on an increased dose of prednisone for several weeks with improvement of most symptoms. Although Dr. Dohlman found that the numbness in Ms. Swindle's left leg had resolved, the left lateral aspect of her foot above the ankle had become involved and continued to be numb and quite painful. Dr. Dohlman found her motor function to be intact and found no synovitis. Electromylogram and nerve conduction studies revealed a left deep peroneal neuropathy. A few weeks after Ms. Swindle was placed on an increased dose of prednisone, her left ankle showed slight improvement but the left extremity otherwise remained unchanged. She also developed some numbness in her right forefoot. Physical exam revealed bilateral parotid gland swelling and tenderness. (*Id.* at 118).

After the hearing, the ALJ requested an assessment by a medical advisor, Dr. Hibbett. (*Id.* at 120). Dr. Hibbett examined the record and noted, *inter alia*, that Ms. Swindle was diagnosed with systemic lupus and tested positive for rheumatoid arthritis. He opined that her impairments neither met nor equaled a listed impairment and felt that she could perform sedentary work although she was precluded from vig-

orous outdoor work and should avoid exposure to the sun. (*Id.* at 121–22).

The ALJ found that Ms. Swindle had severe disseminated lupus erythematosus, but she did not have an impairment or combination of impairments which met or equaled a listing. (*Id.* at 14–15). The ALJ further found that she could not perform her past relevant work and that her testimony was credible to the extent that she was limited to sedentary work without significant standing or walking; her residual functional capacity was reduced only slightly by her non-exertional limitation of avoiding exposure to the sun. The ALJ applied the Grids and determined that Ms. Swindle was not disabled. (*Id.* at 15).

## ANALYSIS

■ Our review of factual findings made by an ALJ in SSI disability cases is limited to a determination of whether such findings are supported by substantial evidence. 42 U.S.C. § 405(g) (1982); *Richardson v. Perales*, 402 U.S. 389, 390, 91 S.Ct. 1420, 1422, 28 L.Ed.2d 842 (1971); *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir.1987). "In determining whether substantial evidence exists, we must view the record as a whole, taking into account evidence favorable as well as unfavorable to the Secretary's decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir.1986). In contrast, our review of the ALJ's application of legal principles is plenary. *Walker*, 826 F.2d at 999.

Ms. Swindle argues on appeal that the ALJ improperly discounted her testimony about the persistent pain and dizziness she experiences. The appropriate legal standard for evaluating a claimant's subjective complaint of pain is for the ALJ:

> to consider a claimant's subjective testimony of pain if he finds evidence of an underlying medical condition, and either (1) objective medical evidence to confirm the severity of the alleged pain arising

from that condition or (2) that the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain.

*Id.* at 1004 (citation omitted).[1]

Ms. Swindle testified at the hearing that she often feels dizzy, as if she were "going to pass out," and that she experiences foot pain and soreness that prevents her from standing for any length of time. HHS Trans. at 32. The medical evidence in the record shows that Ms. Swindle suffers from systemic lupus with a positive rheumatoid factor, Sjogren's syndrome, and suspected vasculitis. Viewed in its entirety, the medical evidence also shows that her systemic lupus and related rheumatic diseases are of such severity that they could give rise to the pain, weakness and dizziness she alleges. Between August and November of 1987, Ms. Swindle was hospitalized three times for various lupus-related symptoms and for headaches. Although the record indicates that she sometimes responded to medication, Dr. Dohlman's letter and supporting physical examinations reveal a condition severe enough to give rise to foot pain and soreness that could render Ms. Swindle unable to stand long enough to work despite medication. In January 1988, Dr. Dohlman documented an extended continuing episode during which Ms. Swindle experienced numbness in her left leg that later spread to both her feet, accompanied by significant foot pain. Furthermore, the various symptoms of dizziness, weakness and pain she testified about are consistent with the progression of rheumatoid diseases such as systemic lupus and Sjogren's syndrome. *See* L. Gray, R. Gordy, *Attorney's Textbook of Medicine* Ch. 19 (1990); *Johns v. Bowen*, 821 F.2d 551, 556 (11th Cir.1987) (Court utilized attorney's medical textbook description of symptoms of disease in review-

---

1. The quoted pain standard was derived from the 1984 amendment which was to expire on January 1, 1987. Since this case has been litigated throughout the proceedings below and during the administrative process on the assumption that the quoted pain standard applies, and since no party has contended otherwise, we apply the quoted standard without, however, addressing the issue of whether the same standard should survive after expiration of the statute.

ing ALJ's credibility determination of claimant's allegations of pain.)

■ In discounting her allegations of pain, the ALJ noted that in 1985 her treating physician found that she had a full range of motion in her joints and in 1988 Dr. Dohlman found her motor function to be intact with no synovitis.[2] Nevertheless, full range of motion, lack of synovitis, and intact motor function provide no evidence that Ms. Swindle's systemic lupus could not give rise to the pain in her lower extremities and the dizziness she describes. Therefore, we find that the ALJ's determination that her testimony regarding pain and dizziness is only partially credible is not supported by substantial evidence.[3]

■ In evaluating a claimant's residual function capacity, the ALJ must consider a claimant's impairments in combination. 20 C.F.R. § 404.1545 (1989); *Reeves v. Heckler*, 734 F.2d 519, 525 (11th Cir.1984). Because the ALJ improperly discounted Ms. Swindle's subjective complaints of pain and dizziness, he did not give adequate consideration to the effect the combination of her exertional and non-exertional impairments has on her ability to work. Therefore, this case must be remanded to the ALJ for reconsideration of Ms. Swindle's residual functional capacity. On remand, the ALJ should consider whether Ms. Swindle's pain, weakness and dizziness could significantly limit basic work activities such as standing, walking, use of judgment, and dealing with changes in routine work situations. *See* 20 C.F.R. § 416.921(b) (1989). If Ms. Swindle's non-exertional impairments significantly limit basic work activities, the ALJ should not rely solely on the Grids and should take evidence from a vocational expert to determine whether there exists in the national economy a significant number of jobs for someone with Ms. Swindle's limitations. *Walker*, 826 F.2d at 1003; *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir.1985).

■■ Two additional arguments raised by Ms. Swindle on appeal are without merit. First, she argues that she was denied due process when the ALJ failed to inform her of her right to cross-examine Dr. Hibbett. This very issue was decided in *Hudson v. Heckler*, 755 F.2d 781, 784–85 (11th Cir.1985), in which this circuit held that when a claimant is represented by paralegal, an ALJ's notice of rights to respond to a post-hearing medical opinion by a non-examining physician which does not mention the right to cross-examine the physician does not deprive the claimant of due process. Ms. Swindle also argues that the many medications she is taking have severe side effects that the ALJ failed to take into consideration. However, the ALJ noted that Ms. Swindle did not complain of side effects, with the exception that she felt that one medication might be giving her headaches, and the record did not disclose any concerns about side effects by the several doctors who examined and treated her. The ALJ's determination that side effects from medication did not present a significant problem is therefore supported by substantial evidence.

## CONCLUSION

Because the ALJ improperly discounted Ms. Swindle's allegations of pain and dizziness, the denial of Ms. Swindle's benefits is VACATED and REMANDED to the ALJ for reconsideration of Ms. Swindle's residu-

---

**2.** Synovitis is an inflammation of the membrane lining the interior of a joint, accompanied by an overproduction of snyovial fluid that causes swelling. J. Schmidt, *Attorneys Dictionary of Medicine* (1989).

**3.** The ALJ's finding regarding Ms. Swindle's residual functional capacity mirrors the conclusions reached by Dr. Hibbett, the consulting doctor who reviewed the medical evidence after the hearing. Although Dr. Hibbett opined that Ms. Swindle was capable of a full range of sedentary work, with the restriction that she avoid exposure to the sun, his opinion neither took into account nor refuted Ms. Swindle's non-exertional symptoms of pain and dizziness. Because Dr. Hibbett did not examine Ms. Swindle, his opinion is entitled to little weight and taken alone does not constitute substantial evidence to support an administrative decision. *Broughton v. Heckler*, 776 F.2d 960, 962 (11th Cir.1985).

al functional capacity consistent with this opinion.