**Theotis McNABB, Plaintiff,**

v.

**Jo Anne B. BARNHART, Commissioner of Social Security, Defendant.**

**Civil Action No. 03–M–290–S.**

United States District Court, M.D. Alabama, Southern Division.

Dec. 3, 2003.

Georgia H. Ludlum, Law Offices of Georgia H. Ludlum, Dothan, AL, for Plaintiff.

Martha Ann Miller, Leura Garrett Canary, U.S. Attorney's Office, Montgomery, AL, for Defendant.

## MEMORANDUM OPINION

McPHERSON, United States Magistrate Judge.

Claimant Theotis McNabb ["McNabb"] applied for disability insurance benefits pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 401 et seq. and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381 et seq. alleging that he was unable to work because of a disability. Upon denial of his application, McNabb presented his evidence to an Administrative Law Judge ["ALJ"], who, after conducting a hearing, also denied the claim (R.8–23). The Appeals Council rejected a subsequent request for review (R.4–5), and the ALJ's decision consequently became the final decision of the Commissioner of Social Security ["Commissioner"].[1] *See Chester v. Bowen,* 792 F.2d 129, 131 (11th Cir.1986).

On 14 March 2003, the claimant filed the instant action (Doc. # 1), and the case is now before the court for review pursuant to 42 U.S.C. §§ 405(g) and 1631(c)(3). Pursuant to 28 U.S.C. § 636(c), the parties have consented to entry of final judgment by the United States Magistrate Judge. Based on the court's review of the record in this case and the briefs of the parties, the court concludes that the decision of the Commissioner should be AFFIRMED.

## I. PROCEDURAL BACKGROUND AND FACTS

McNabb was born on 28 December 1943 and was 57 years old when the administra-

---

**1.** Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub.L. No. 103–296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

tive hearing was decided (R. 31). He has a fourth grade education (R. 33) and past relevant work experience as a roofing company laborer, heavy delivery truck driver, dump truck driver, and laborer for a roofing company (R.54). McNabb alleges a disability onset date of 2 October 1997 (R. 94) due to heart and eye problems, and weakness in his back and in his knees (R.100). At issue is whether the Commissioner committed reversible error by not expressly considering the results of McNabb's graded exercise stress test that was performed by Dr. Alfano, a treating cardiologist. McNabb asserts that had the results of the stress test been properly considered in combination with other limitations imposed by his other impairments, he would meet the equivalent of a listed impairment within the meaning of the Act.

## II. STANDARD OF REVIEW

The standard of review of the Commissioner's decision is a limited one. Reviewing courts "may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner]." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir.1996) (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir.1983)). The court must find the Commissioner's factual findings conclusive if they are supported by substantial evidence.[2] *Graham v. Appfel*, 129 F.3d 1420, 1422 (11th Cir.1997). "There is no presumption, however, that the Commissioner followed the appropriate legal standards in deciding a claim for benefits or that the legal conclusions reached were valid." *Miles v. Chater*, 84 F.3d at 1400 (citations omitted).

■ In determining whether the Secretary's decision is supported by substantial

evidence, a reviewing court must scrutinize the record as a whole and evaluate each of the four types of evidence deemed critical to a fair assessment of a claimant's case. *See Boyd v. Heckler*, 704 F.2d 1207 (11th Cir.1983). Those four types of evidence are:

1. objective medical facts and clinical findings;

2. the diagnoses of examining physicians;

3. subjective statements made by the claimant and by corroborating witnesses; and

4. the claimant's age, education and work history.

*Id.*

## III. DISCUSSION

### A. Standard for Determining Disability

An individual who files an application for Social Security disability benefits must prove that he is disabled. *See* 20 C.F.R. § 416.912 (1999). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Social Security regulations provide a five-step sequential evaluation process for determining if a claimant has proven that he is disabled. *See* §§ 20 C.F.R. 404.1520(a)-(f), 416.920(a)-(f).(1999). The ALJ must evaluate the claimant's case using this sequential evaluation process, *Am-*

---

**2.** In *Graham v. Apfel,* 129 F.3d at 1422, the Court of Appeals has stated that:

Substantial evidence is described as more than a scintilla, and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971).

*bers v. Heckler,* 736 F.2d 1467, 1469 (11th Cir.1984), and the steps are as follows:

1. Is the person presently unemployed?

2. Is the person's impairment severe?

3. Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?

4. Is the person unable to perform his or her former occupation?

5. Is the person unable to perform any other work within the economy?

An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen,* 800 F.2d 1026, 1030 (11th Cir.1986).

### B. The ALJ's Findings

In the instant matter, the ALJ made the following findings within the structure of the sequential evaluation process as outlined above:

1. McNabb has not engaged in any substantial gainful activity since the onset date of his alleged disability (R.12).

2. McNabb has the following "severe" impairments: status post myocardial infarction, cocaine cardiomyopathy, hypertension, glaucoma, degenerative joint disease, spine and knee osteoarthritis, and lipoma of the left shoulder (R.17).

3. McNabb's claims of pain are not credible (R. 22).

4. McNabb's impairments, whether considered individually or in combination, *do not meet or equal* any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (R.17).

5. McNabb's physical residual functional capacity does not permit him to perform past relevant work, but it does permit him to perform "a full range of medium work" that is available in significant numbers in the national economy (R. 21).

### C. Application of the Standard to the Claimant

Based upon the ALJ's finding, the claimant survives the first two steps of the sequential evaluation process, because he is not engaged in "substantial gainful activity" and he has conditions that are "severe." However, the claimant does not survive step three, because the ALJ concluded that the combinations of his determined impairments were not sufficiently severe to meet or equal the severity of any listed impairment set forth in the governing regulations (R. 17). The ALJ continued his analysis nonetheless to evaluate the claimant's functional limitations in order to determine whether the limitations are truly disabling within the meaning of the Act.

### D. Examination and Testing Outcomes

The records reflect McNabb's history of hospital admissions and treatment arising from (1) multiple physical injuries sustained during his fall from a logging truck, and (2) heart problems associated with his use of cocaine (R.171–183, 184–201, 202–212, 213–221, 260–268, 277–281, 282–291, and 292–297). While a number of physicians have treated McNabb over the years, the primary medical opinion in this case comes from his treating cardiologist, Dr. Ronald Alfano ["Dr. Alfano"]. Thus, the substance of this report and the consideration given this report by the Commissioner are the focus of the court's analysis.

### E. McNabb's Claims on Appeal

The primary issue presented is whether the Commissioner gave inadequate consideration to the results of McNabb's stress test that was conducted by Dr. Alfano. A secondary issue is whether various agency consulting physicians appropriately considered all of McNabb's medical records prior to drawing conclusions about his physical and mental residual functional capacity. Particularly, McNabb asserts that:

1. The ALJ failed to refute properly McNabb's cardiologist's opinions regarding the results of McNabb's graded exercise test (Doc. # 12, p. 7); and

2. The ALJ failed to make a proper evaluation of the combination of McNabb's impairments under listing 2.03 or listing 4.02(b) (Doc. # 12, p. 11); and

3. The ALJ's finding that McNabb retains the residual functional capacity to perform a reduced range of medium work is not based on substantial evidence (Doc. # 13).

Importantly, McNabb's third issue appears to presuppose that explicit acceptance of and reliance upon the results of the graded exercise stress test performed by Dr. Alfano (issue one) would alter the ALJ's finding that the combination of severe impairments did not equal a listed impairment (issue two). The court declines to discuss or analyze the third issue because the court finds that McNabb's presuppositions related to issues one and two to be without merit.

Of relevance here is a discussion of the weight that should be assigned to the medical opinion of a treating physician and adequate consideration of whether McNabb's combination of severe impairments meet the equivalent of a listed impairment.

### F. Analysis of the Dispute

#### 1. Treatment of an Examining Doctor's Opinion

■ As a matter of law, if an ALJ gives less than substantial weight to the treating physician's opinion, he must show "good cause" for doing so. Failure to do so is reversible error. *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir.1986).

A similar preference for the opinions of treating doctors is found in the Commissioner's regulations:

> Generally, we give more weight to opinions from your treating sources, ·since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations or brief hospitalizations.

20 C.F.R. § 404.1527(d)(2).

Dr. Alfano was one of McNabb's treating physicians. In fact, Dr. Alfano examined McNabb on 8 December 1998(R. 213) and in February 2000, after McNabb was treated in the Dale Medical Center emergency room on 10 November 1998. On 8 December 1998, Dr. Alfano conducted a medical history and physical examination, paying particular attention to McNabb's range of motion (R. 214–218). He also performed an echocardiographic procedure (R. 219).[3] Based on his professional opinion derived from the testing results and

---

**3.** An echocardiographic procedure is a noninvasive and painless diagnostic procedure for making a record of cardiac structure and functioning by means of high frequency sound waves reflected back from the heart. Websters Medical Desk Dictionary (1986).

his observations during the visit, Dr. Alfano made the following findings and drew the following conclusions:

## OFFICE VISIT

Mr. McNabb is a 54 year old black male originally evaluated after presenting on 11/10/98 with an acute MI with elevated CPKs and isoenzymes. He was referred to the services of Dr. Alibadi on 11/11/98 undergoing cardiac catherization [sic] on 11/12/98 revealing a totally occluded distal PDA and an ejection fraction of 40% with diffuse global hypokinesis and was felt to have underlying cocaine cardiomyopathy as he was smoking crack cocaine and very likely had [a] spasm of his right coronary artery with subsequent thrombus formation and subsequent MI ... He does relate having episodes, albeit infrequent of substernal chest pressure and tightness lasting 8–10 minutes ... He does have dyspnea on exertion after one to two blocks. He denies PND, orthopnea, and lower extremity edema. He also denies syncope or near syncope.

.    .    .    .    .

**ASSESSMENT:**

1. ASCVD, status post cardiac catherization with minimal disease in his coronary arteries other than a totally occluded distal PDA. He remains adherent to his ASA q day as well as SL NTG prn. My feeling [is] with his continued cigarette smoking he'll need some extended release preparation NTG and I will give him samples of Ismo 20mg to be taken b.i.d. and also write him a Rx. He [is] also to continue his Lotrel and prn Sl NTG. I have really been very vocal about him discontinuing smoking altogether as this in al[l] likelihood worsens his spasms and anginal episodes.

2. Hypertension controlled on Lotrel.

3. Ischemic cardiomyopathy also controlled on his Lotrel. **We will plan on following him every 6 months with yearly exercise stress test.**

.    .    .    .    .

(R. 213).

## 2–D ECHOCARDIOGRAM

... The internal dimension of the left ventricle is normal as is the internal dimension of the right ventricle, left atrium and aortic root. However, when the aortic root is measured in comparison with the internal dimension of the left atrium, it is considered dilated. The mitral valve apparatus demonstrates normal coaptation of the anterior and posterior leaflets with no evidence of mitral valve prolapse. There is no significant pericardial effusion present. The aortic valve appears to have three distinct cusps with no significant restriction to opening. The pulmonic valve appears to be anatomically normal. Regional left ventricular wall motion is surprisingly well visualized. There appears to be mild global hypokinesis of the left ventricle with an ejection fraction estimated to be 45 to 50 percent[.] The left ventricular apex is not well visualized.

. . .

(R. 219)

## CONCLUSIONS

1. Normal internal dimension of the left ventricle with mild global hypokinesis and mild reduction in systolic function.

2. Normal right-sided chambers in both size and function.

3. Normal internal dimension of left atrium and aortic root.

4. No significant pericardial effusion.

5. Probable diastolic dysfunction.

6. Mild tricuspid insufficiency with normal pulmonary pressures.

7. Normal mitral and aortic valves.

8. No significant mitral or aortic valve insufficiency.

9. Pulmonic insufficiency.

(R. 220).

While Dr. Alfano concluded that most of McNabb's cardio vitals were "normal", he did note that there was "probable diastolic dysfunction" and "mild tricuspid insufficiency." However, aside from the assignment of an annual stress test, Dr. Alfano did not identify any other major problems affecting McNabb's health other than cocaine cardiomyopathy and status post cardiac catheterization.

In the court's opinion, the ALJ **did** give substantial weight to the opinion of Dr. Alfano. The plaintiff contends that the ALJ did not pay proper attention to the results of the stress test performed by Dr. Alfano. As a matter of law, it is not the results of an individual test to which an ALJ must give deference when that test is performed by a treating physician. Rather, it is the overall opinion of the treating physician that must be accorded substantial weight. Again, the ALJ in this case did accord substantial weight to Dr. Alfano's opinion as indicated by the ALJ's analysis in his decision. Specifically the ALJ wrote:

Dr. Ronald Alfano, a cardiologist, notes that the claimant was originally evaluated after presenting on November 10, 1998, with an acute myocardial infarction (MI) with elevated CPKs and isoenzymes. The claimant was referred to the services of Dr. Aliabardi on November 11, 1998, undergoing cardiac catherization on November 12, 1998, revealing a totally occluded distal posterior descending artery (PDA) and an ejection fraction of 40% with diffuse global hypokinesis and was felt to have underlying cocaine cardiomyopathy as he was smoking crack cocaine and very likely had spasm of his right coronary artery with subsequent thrombus formation and subsequent MI. He was treated conservatively and relegated to medical management and now returns in follow up. He does relate having episodes, for whatever reason not utilizes SL NTG. Dr. Alfano indicates that I believe it is because they told him to take it for chest pain but not for pressure or tightness. The claimant was also placed on Lotres for his cardiomyopathy and mild hypertension.

(R.13).

The ALJ further observed that "Dr. Alfano assessed the claimant with arteriorsclerone cardiovascular disease (ASCVD), status post cardiac catherterization with minimal disease in his coronary arteries other than a totally occluded distal PDA" (R. 13). Giving substantial weight to Dr. Alfano's overall opinion, the ALJ determined, consistent with the doctor's prognosis, that the severe impairments had by McNabb included status post myocardial infarction and cocaine cardiomyopathy (R.17).

McNabb argues that "the ALJ's RFC is inconsistent with the opinions expressed by Dr. Alfano regarding McNabb's 2000 Graded Exercise Test" (Doc. # 12, p. 10). The court disagrees. In support thereof, the court notes that even if McNabb's aforementioned assertion were true, it would not be a justifiable reason to reverse the ALJ's decision, because it would not constitute good cause for doing so. Specifically, good cause for the rejection would be the consistency of findings to support the ALJ regarding RFC determined by a number of consulting physicians (R. 234–241, 242–249, 270–276, 298–305).

Dr. Alfano's conclusions based on his administration of the graded exercise test on 23 February 2000 were not significantly different from the conclusions that he drew in 1998. With regard to the graded exercise test in 2000, Dr. Alfano stated

. . . . .

The patient developed a rate dependent left anterior fasicular block and left axis deviation but there were **no significant ischemic** ST segment nor T wave **changes** [emphasis added].

. . . . .

*CONCLUSION:* Abnormal spect imaging with evidence for a very small area of scar in the inferior basal wall of the left ventricle. There is no evidence of ischemia whatsoever. There is a moderate reduction in LVEF.

(R. 279).

Dr. Alfano does not draw any conclusion that would suggest a severe impairment that the ALJ did not list. Moreover, Dr. Alfano's comments do not remotely give the ALJ a direction or an indication that any evidence exists from the graded exercise test that would support the finding of an additional severe impairment to consider in combination with the others. In consideration thereof, the court finds McNabb's contentions to be meritless.

**2. Applicable Law—Combination of Impairments**

■ It is well established that in making a disability determination, the ALJ must consider the combined effects of all impairments. *Davis v. Shalala,* 985 F.2d 528, 533 (11th Cir.1993); *Swindle v. Sullivan,* 914 F.2d 222, 226 (11th Cir.1990); *Walker v. Bowen,* 826 F.2d 996, 1001 (11th Cir.1987). Where there is more than one impairment, the claimant may be found disabled even though no one impairment

considered individually would be disabling. *Walker,* 826 F.2d at 1001.

■ The ALJ must evaluate the combination of the claimant's impairments with respect to the effect they have on the ability to fill the duties of work for which he or she is otherwise capable of performing. *Lucas v. Sullivan,* 918 F.2d 1567, 1574 (11th Cir.1990). Merely reciting that the claimant's impairments in combination are not disabling is not enough. Importantly, the ALJ did more than recite the claimant's impairments in combination with one another in the instant matter. Specifically the ALJ stated:

Under the fourth step, I must determine whether the claimant can perform any past relevant work. This necessitates that I evaluate the claimant's residual functional capacity. In doing so, I have considered the revised criteria for residual functional capacity assessments from Social Security Ruling 96–8. In addition, I have considered the claimant's subjective complaints, including those regarding pain, in accordance with 20 C.F.R. § 416.929, Social Security Ruling 96–7, and applicable Eleventh Circuit case law. Medical opinions as to the claimant's work capacity, including those of Disability Determination Services consultants, have been evaluated pursuant to 20 C.F.R. § 416.927 and Social Security Rulings 96–2p and 96–6p.

(R.17)

The ALJ concluded that the plaintiff's impairments did not preclude him from performing medium work. Further, the plaintiff's impairments in combination did not prevent him from performing a particular range of work available in the national economy.

McNabb contends that the ALJ failed to consider his impairments in combination (Doc. # 12, p. 11). Specifically, the claimant contends that the ALJ did not deter-

mine, based on Dr. Alfano's conclusion drawn from the exercise test, that McNabb lacks aerobic capacity to perform medium work (Doc. # 10, p. 13). With regard to the test McNabb specifically states,

> These tests prove McNabb does not have the aerobic capacity, as evidenced by his 7 METs exercise test, or the functional capacity, as evidenced by his 33% LVEF, to perform a reduced range of medium work on a regular and continuing basis as that term is defined by the regulations. The ALJ may not arbitrarily reject uncontroverted medical testimony. *Walden v. Schweiker,* 672 F.2d 835, 839 (11th Cir.1982), citing *Goodley v. Harris,* 608 F.2d 234, 236 (5th Cir.1979).

(Doc. # 12, p. 11)

■ Because the ALJ properly considered the combination of severe impairments and McNabb has not given the court sufficient reason to believe otherwise, the court rejects this argument as well.

## IV. CONCLUSION

Therefore, it is hereby ORDERED that the decision of the Commissioner is AFFIRMED.