[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 15, 2009
THOMAS K. KAHN

_____

No. 08-16812
Non-Argument Calendar

_____

D. C. Docket No. 07-00157-CV-WLS-1

ELOIS P. RUSSELL,

Plaintiff-Appellant,

versus

MICHAEL J. ASTRUE,
Commissioner of Social Security,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Georgia

_____

(June 15, 2009)

Before BIRCH, HULL and KRAVITCH, Circuit Judges.

PER CURIAM:

Elois Russell appeals the district court's order affirming the decision of the Social Security Administration to deny her application for social security disability benefits. For the reasons stated below, we vacate and remand.

## BACKGROUND

For approximately eighteen years before she applied for social security benefits, Russell worked as a dry kettle feeder, lifting and carrying wood and feeding wood into a kiln. In May 2004, Russell applied for disability benefits, alleging that her ability to work was limited by pain in the neck, right arm, left wrist, left knee, ankles, and lower back. She also alleged sickness related to her high blood pressure and kidney stones. In subsequent disability reports, Russell claimed that her heart raced and that she experienced pain and swelling in her left side, chest pain, and severe pain in the right side. Russell first asserted that her onset date was August 2, 2003, but later amended the onset date to July 6, 2004, her last day of work.

The Social Security Commissioner denied her application initially and on reconsideration. Russell then requested and received a hearing before an Administrative Law Judge (the "ALJ"). The ALJ determined that Russell was not disabled. The Appeals Council denied review, making the ALJ's decision the final decision of the Social Security Commissioner.

2

Russell then initiated the instant civil action pursuant to 42 U.S.C. § 405(g) seeking review of the Commissioner's decision. The district court, adopting the Report and Recommendation of the Magistrate Judge, affirmed the decision of the Commissioner.

## STANDARD OF REVIEW

"[W]e review de novo the legal principles upon which the Commissioner's decision is based." Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005). We review factual findings of the Commissioner, however, with great deference. Id. We will not re-weigh evidence or substitute our judgment for that of the Commissioner, but instead review the entire record to determine if the decision reached is reasonable and supported by substantial evidence. Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (quotation omitted). There must be "more than a mere scintilla" of evidence to support the ALJ's conclusions. Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998) (quotations omitted). We review the decision of the ALJ as the Commissioner's final decision where, as here, the ALJ denies benefits and the Appeals Council denies review of the ALJ's decision. Doughty, 245 F.3d at 1278.

## DISCUSSION

The claimant carries the burden of demonstrating the existence of a disability as defined by the Social Security Act. Brady v. Heckler, 724 F.2d 914, 918 (11th Cir. 1984). Disability "is defined by 42 U.S.C. § 1382c(a)(3)(A) as inability 'to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" McCruter v. Bowen, 791 F.2d 1544, 1545 (11th Cir. 1986).

The social security regulations establish a five-step, "sequential evaluation process," to evaluate disability claims. Id. at 1546; 20 C.F.R. § 416.920. First, the claimant must establish that she is no longer "doing substantial gainful activity." 20 C.F.R. § 416.920(a)(4)(i). Second, the Commissioner considers the medical severity of the claimed impairments; a claimant will be considered disabled only if she has a severe medically determinable impairment, or a combination of impairments. 20 C.F.R. § 416.920(a)(4)(ii). Third, the severe impairment must meet or equal one of the listed impairments in Appendix 1 and meet the duration requirement. 20 C.F.R. § 416.920(a)(4)(iii). Fourth, the Commissioner assesses the claimant's residual functional capacity and compares that capacity to her past relevant work; if she can still perform her past relevant work, the claimant is not

4

"disabled." 20 C.F.R. § 416.920(a)(4)(iv). Finally, if the claimant is found to be unable to perform her past relevant work, the Commissioner will assess her residual functional capacity and age, education, and work experience to see if she could perform other work; if the claimant can make an adjustment to other work, she will not be found disabled. 20 C.F.R. § 416.920(a)(4)(v).

Russell argues that the ALJ erred by (i) failing to consider all of her alleged impairments in determining her residual functional capacity, (ii) erroneously rejecting the opinion of an examining physician, (iii) failing to support properly his credibility finding, and (iv) finding that Russell could return to her past relevant work. We address each in turn.

*Consideration of Other Impairments*

Russell argues that the ALJ did not consider fully the effect of her shoulder and back impairments. She also asserts that the ALJ failed to properly account for all of her claimed impairments by not considering her untreated high blood pressure.

As for Russell's shoulder and neck impairments, the ALJ summarized the diagnoses of the examining and consulting physicians concerning her back and neck problems. The ALJ considered Russell's impairments to be "degenerative disc disease/degenerative joint disease of the cervical spine with mild tenderness

5

at C5-6, mild impairment right shoulder; minor thoracic scoliosis; mild irregularity left wrist; and mild to moderate lumbar levo scoliosis." The ALJ acknowledged these impairments, but concluded that the "combined effect and combination of these impairments do not significantly limit her ability to perform basis work-related activities." Thus, the ALJ did not fail to consider or ignore her shoulder and neck pain; he simply found that they did not cause disability.

Russell's arguments that the ALJ did not consider the full effect of these judgments are more in the manner of disagreements with his opinion, rather than allegations that the ALJ applied the wrong legal standard. Our review, however, is narrow and "[w]e may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner]. Even if we find that the evidence preponderates against the [Commissioner']'s decision, we must affirm if the decision is supported by substantial evidence." Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983). Here, the Commissioner gave specific reasons why he felt that her impairments did not rise to the level of disability, and we are precluded from re-weighing the evidence and reversing this decision.[1]

---

[1] The ALJ reviewed the medical records and noted that none of the x-rays or other tests showed "extreme" or "acute" abnormalities. He determined that, although Russell had some abnormalities, there was "no objective medical evidence of any abnormality to cause such limitations" as were found by the examining physician. Additionally, he relied on the examining physician's findings that Russell's "physical examination was **unremarkable**; **no** atrophy; coordination and functional use of upper extremities and lower extremities **normal**; full range of

Russell's argument that the ALJ erred by not considering her untreated high blood pressure as a severe impairment also fails. In his opinion, the ALJ took note of Russell's blood pressure readings as stated in her medical records; those readings appear to be high. There was, however, no evidence that the high blood pressure was causing her to be unable to work. "[T]he severity of a medically ascertained disability must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality." McCruter, 791 F.2d at 1547; Moore, 405 F.3d at 1213 n.6 ("[T]he mere existence of [] impairment[] does not reveal the extent to which [it] limit[s] her ability to work or undermine the ALJ's determination in that regard."). In other words, an abnormality that does not cause an impairment will not support a finding of disability. And the claimant bears the burden of proving that a given impairment causes her to be disabled. Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991). Russell has not identified documentation in her medical records which demonstrates that her high blood pressure causes her to be "disabled." Thus, we conclude that the ALJ did not err by ignoring Russell's untreated high blood pressure as a severe impairment.

---

motion of all joints, grip and pinch **normal**." (emphasis in original).

*Discrediting the Opinion of the Examining Physician*

Russell next argues that the ALJ erred by discrediting the opinion of the examining physician. "The testimony of a treating physician must ordinarily be given substantial or considerable weight unless good cause is shown to the contrary." MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986). It is, not however, unlawful to discredit the opinion of an examining or treating physician, so long as the Commissioner "specif[ies] what weight is given to a treating physician's opinion and any reason for giving it no weight . . . ." Id.

Here, the ALJ discredited the opinion of the examining physician, Dr. Bari, that Russell was limited in walking (no more than one quarter mile) and lifting (no more than 15 pounds) because he found that "there is no objective medical evidence of any abnormality to cause such limitations." Not only did the ALJ find that Russell's other medical records did not support Dr. Bari's opinion that Russell was disabled, but the ALJ noted that Dr. Bari's own examination of Russell conflicted with his opinion because his examination revealed her to be "normal" in nearly all respects. Accordingly, the ALJ had good cause to determine that Dr. Bari's opinion should be given little weight, and that more weight should be given to his physical exam findings and Russell's other medical records. Because the

ALJ articulated his specific, cogent reasons for discrediting the opinion of the examining physician, we find no error.

*The Credibility Finding*

Russell also asserts that the ALJ erred in ignoring her subjective complaints of pain and inability to work. Russell argues that, because the ALJ did not properly consider her own testimony concerning her pain and activity limitations, he erred by not asking the vocational expert a hypothetical question to elicit an opinion on whether these complaints gave rise to a disability. Russell contends that the ALJ failed to discuss her stated activities of daily living in its opinion, including her testimony that she required assistance hanging the laundry and that she required an hour break after performing an hour of housework. She submits that her testimony demonstrated that her daily activities are consistent with an inability to lift 50 pounds occasionally and 25 pounds frequently, as would be required to do her past work.[2] Thus, she contends that the case should be reversed and remanded for vocational expert testimony regarding the impact of her limitations on her past relevant work.

_____

[2] The parties appear to agree that her prior position as a dry kiln/kettle operator fits the job description of a dry kiln operator/helper as contained in the U.S. Department of Labor Dictionary of Occupational Titles, which involves "an exertional level of medium."

"A claimant's subjective complaints of pain cannot in and of themselves serve as conclusive evidence of disability. The record must document by medically acceptable clinical or laboratory diagnostic techniques the existence of a medical impairment which could reasonably be expected to produce the disabling pain." Chester v. Bowen, 792 F.2d 129, 132 (11th Cir. 1986). A three-part "pain standard" is used when a claimant attempts to establish disability through her own testimony of pain or other subjective symptoms. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991). Under this standard, the claimant must show:

> (1) evidence of an underlying medical condition and either
> (2) objective medical evidence that confirms the severity of the
> alleged pain arising from that condition or (3) that the objectively
> determined medical condition is of such a severity that it can be
> reasonably expected to give rise to the alleged pain.

Id. If the claimant's subjective testimony is supported by medical evidence and satisfies this pain standard, then her testimony may itself be sufficient to support a finding of disability. Id. If the Commissioner "decides not to credit such testimony, he must discredit it explicitly, and articulate explicit and adequate reasons for doing so." Id. (citation omitted). "Failure to articulate the reasons for discrediting subjective pain testimony requires, as a matter of law, that the testimony be accepted as true." Id. Here, the Commissioner failed to articulate

10

fully the reasons for discrediting Russell's pain testimony and we, therefore, must remand for further proceedings.

The ALJ found that Russell's statements concerning the intensity, persistence, and limiting effects of her alleged symptoms were generally credible. Although he determined that her described activities of daily living demonstrated a greater "capacity" than she alleged, he did not find that those activities undermined her complaints of pain or other symptoms. Thus, the ALJ did not make an explicit adverse credibility finding and was obliged to consider Russell's testimony as true. See Brown, 921 F.2d at 1236. Russell's testimony established that she left work after she began to experience pain in her right arm. She also reported "problems" in her right shoulder, behind her neck, her left wrist, her left knee, and both ankles and headaches. She stated during the hearing that her shoulder, neck, wrist, and knee pain was at eight on a scale of one to ten most of the time and at five the rest of the time

The ALJ determined that Russell had several severe impairments. Thus, Russell had to show (1) objective medical evidence confirming the severity of the alleged pain arising from those impairments or (2) that the objectively determined medical impairments were of such a severity that they could be reasonably expected to give rise to the alleged pain. See id. After reviewing the record, the

11

ALJ determined that Russell's "medically determinable impairments could reasonably be expected to produce the alleged symptoms." Russell thus satisfied the pain standard because she had testimony of pain that prevented her from performing her job as a kettle operator coupled with evidence of an underlying medical condition that could reasonably be expected to give rise to that alleged pain. By satisfying the pain standard, Russell established disability, see id., and an inability to perform her past relevant work. The burden then shifted to the Commissioner to show that she was able to perform other work through vocational expert testimony.[3] See Chester, 792 F.2d at 131-32. Here, although the ALJ made the above findings demonstrating that Russell satisfied the pain standard, he did not present a hypothetical question to the vocational expert[4] regarding Russell's impairments as a result of that pain. This constitutes reversible error. See Swindle v. Sullivan, 914 F.2d 222, 226 (11th Cir. 1990) ("Because the ALJ improperly discounted [the claimant]'s subjective complaints of pain and dizziness, he did not give adequate consideration to the effect the combination of her exertional and

---

[3] Generally, the testimony of a vocational expert is not necessary to determine whether a claimant can perform her past relevant work. Lucas v. Sullivan, 918 F.2d 1567, 1573 n.2 (11th Cir. 1990). The testimony of a vocational expert is necessary, however, if the record is inconclusive as to the claimant's residual functional capacity. Chester, 792 F.2d at 131-32.

[4] We note that for vocational expert testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which includes all of the claimant's impairments. Vega v. Comm'r of Soc. Sec., 265 F.3d 1214, 1220 (11th Cir. 2001).

12

non-exertional impairments has on her ability to work . . . If [the claimant's] non-exertional impairments significantly limit basic work activities, the ALJ should . . . take evidence from a vocational expert to determine whether there exists in the national economy a significant number of jobs for someone with [her] limitations."). This case, therefore, must be remanded to the ALJ for reconsideration of Russell's residual functional capacity. Id.

## CONCLUSION

For the foregoing reasons, we **VACATE, REVERSE** and **REMAND** with instructions that the case be remanded to the Appeals Council.