[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 16-11340
Non-Argument Calendar

_____

D.C. Docket No. 8:15-cv-00453-EAK-TBM

SUSAN H. BROWN,

Plaintiff-Appellant,

versus

COMMISSIONER OF SOCIAL SECURITY,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(February 22, 2017)

Before TJOFLAT, MARCUS and WILLIAM PRYOR, Circuit Judges.

PER CURIAM:

Susan Brown appeals the district court's order affirming the decision of an

administrative law judge ("ALJ") to deny her application for disability insurance

benefits ("DIB"), pursuant to 42 U.S.C. § 405(g).  She argues that the ALJ erred

by: (1) not specifying the weight assigned to the opinions of her treating physicians; (2) not fully developing the record and not crediting her subjective complaints of side effects from her medications and disabling pain caused by her fibromyalgia; (3) failing to properly address her diagnoses for irritable bowel syndrome ("IBS") and gastroesophageal reflux disease ("GERD") in his opinion and when making his residual functional capacity ("RFC") determination; and (4) not adopting the vocational expert's ("VE") response to a hypothetical question about a person who frequently missed work.  After thorough review, we affirm.

When the Appeals Council denies review of the ALJ's decision, we review the ALJ's decision as the Commissioner's final decision.  Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001).  We review the ALJ's decision for substantial evidence, and the application of legal principles de novo.  Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005).  Substantial evidence is less than a preponderance and is relevant evidence that a reasonable person would accept as adequate to support a conclusion.  Id.  We, therefore, will not decide the facts anew, reweigh the evidence, or make credibility determinations.  Id.

First, we disagree with Brown's claim that the ALJ committed reversible error by not specifying the weight assigned to her treating physicians' opinions. Federal regulations define "medical opinions" as "statements from physicians . . . or other acceptable medical sources that reflect judgments about the nature and

severity of [a patient's] impairment(s), including [her] symptoms, diagnosis and prognosis, what [she] can still do despite impairment(s), and [her] physical or mental restrictions."  20 C.F.R. § 404.1527(a)(2).  The opinion of a treating physician must be given substantial or considerable weight unless "good cause" is shown to the contrary.  Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011).  We've found "good cause" to exist when: (1) the opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the opinion was conclusory or inconsistent with the doctor's own medical records.  Id.  The ALJ must specify the weight given to medical opinions and state the reasons for giving such weight.  Id.  Failure to "specify what weight is given to a treating physician's opinion and any reason for giving it no weight" is reversible error.  MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986).  An ALJ may rely on opinions of non-examining sources that do not conflict with those of examining sources.  Edwards v. Sullivan, 937 F.2d 580, 584-85 (11th Cir. 1991).

Here, Brown's treating physicians -- Drs. Lipson, Bala, Vargas, Clement, and Lubin -- all produced records that described Brown's symptoms, reported test results, and made diagnoses and assessments of her medical conditions.  To the extent these reports qualified as medical opinions, the ALJ erred by failing to specify the weight assigned to them.  See 20 C.F.R. § 404.1527(a)(2); Winschel, 631 F.3d at 1179.  Nonetheless, any error by the ALJ in failing to specify weight

3

was harmless. See, e.g., Bass v. McMahon, 499 F.3d 506, 510 (6th Cir. 2007) ("[The] failure to explicitly state how much weight the ALJ was providing such observations is harmless . . . because the ALJ's opinion is completely consistent with such observations"); Schomas v. Colvin, 732 F.3d 702, 707 (7th Cir. 2013) (applying harmless error review to an ALJ's failure to specify why controlling weight was given to one opinion); Keyes-Zachary v. Astrue, 695 F.3d 1156, 1165 (10th Cir. 2012) ("Any error in failing to specify the weight given to the opinion was harmless"). As the ALJ's decision makes clear, Brown's treating physicians' opinions were considered in detail. For example, the ALJ noted the physicians' findings of muscle tenderness and joint pain; their diagnoses of fibromyalgia, IBS, and GERD; their abnormal findings in at least one range of motion and straight leg raise test; and their prescription of medications, physical therapy, and epidural shots. He added that the physicians' objective findings were otherwise mostly normal; conservative treatments usually were recommended; and epidurals and medications provided relief. The ALJ also observed that no treating physician had provided any specific limitations or restrictions that conflicted with his finding. Rather, Brown's physicians' opinions simply constituted objective findings, diagnoses, assessments, and treatment plans.

As for Brown's claim that the ALJ erred in assigning great weight to the opinion of Dr. Bancks, who was not a treating physician, we are unpersuaded. As

4

the record shows, the ALJ determined that Dr. Bancks's RFC determination was consistent with Brown's medical records overall. See Edwards, 937 F.2d at 584-85. Nor can we say that the ALJ "rejected the findings and opinions" of Brown's treating physicians about her fibromyalgia. The record reveals that the ALJ made the explicit finding that she suffered from fibromyalgia and that it constituted a severe impairment. Accordingly, the ALJ did not commit reversible error by failing to specify the weight given to any opinions.

We also find no merit to Brown's claim that the ALJ failed to develop the record and credit her complaints. Under federal regulations, if the record shows that a claimant has a medically determinable impairment that could reasonably be expected to produce her symptoms, the ALJ must evaluate the intensity and persistence of the symptoms in determining how they limit the claimant's capacity for work. 20 C.F.R. § 404.1529(c)(1). In doing so, the ALJ considers all of the record, including the objective medical evidence, the claimant's history, and statements of the claimant and her doctors. Id. § 404.1529(c)(1)-(2). The ALJ may consider other factors, such as: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the pain or other symptoms; (3) any precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of the claimant's medication; (5) any treatment other than medication; (6) any measures the claimant used to relieve her pain or symptoms; and (7) other

5

factors concerning the claimant's functional limitations and restrictions due to her pain or symptoms. Id. § 404.1529(c)(3). The ALJ then examines the claimant's statements regarding her symptoms in relation to all other evidence, and considers whether there are any inconsistencies or conflicts between those statements and the record. Id. § 404.1529(c)(4). "After considering a claimant's complaints of pain, the ALJ may reject them as not creditable, and that determination will be reviewed for substantial evidence." Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992). The ALJ must explicitly and adequately articulate his reasons if he discredits subjective testimony. Id.

The ALJ has the basic obligation to develop the record fully and fairly, but the claimant has the burden of proving that she is disabled and the responsibility of producing evidence in support. Ellison v. Barnhart, 355 F.3d 1272, 1276 (11th Cir. 2003). We've said that the side effects of medications could render a claimant disabled or contribute to her disability, and the ALJ has a duty to investigate these side effects. Cowart v. Schweiker, 662 F.2d 731, 737 (11th Cir. 1981). An ALJ's determination that medication side effects do not present a significant problem is supported by substantial evidence if the claimant made only an isolated complaint about the side effects and the record does not suggest her doctors were concerned about the side effects. Swindle v. Sullivan, 914 F.2d 222, 226 (11th Cir. 1990).

6

Here, the ALJ did not err in finding Brown's subjective complaints only partially credible. For starters, the record does not support her assertion that the ALJ failed to properly consider her side effects. In his discussion of her RFC, the ALJ noted her testimony that her medications caused drowsiness and constipation. The ALJ also recognized that Brown complained to Dr. Clements of blurry vision caused by one medication and that she complained to Dr. Lubin of constipation. Thus, the ALJ did not fail in his duty to consider her side effects in determining her RFC. Compare with Cowart, 662 F.2d at 737.

Nor does the record support Brown's assertion that the ALJ failed to articulate his reasons for only partially crediting her testimony. As we've already discussed, the ALJ conducted a detailed review of Brown's medical history, noted the activities she was still capable of performing, compared the evidence with Dr. Bancks's RFC determination, and concluded that her impairments were not as intense, severe, or limiting as she claimed. See 20 C.F.R. § 404.1529(c)(1)-(4).

Moreover, substantial evidence supports the ALJ's determination that Brown was only partially credible. As the record reveals, no physician suggested that Brown was unable to work or perform daily activities due to her conditions. In addition, despite her complaints of pain, her doctors reported mostly normal observations. For example, Dr. Lipson stated that Brown's MRI revealed mild vertebral spurs, but was otherwise essentially normal. Over the course of several

visits, Dr. Bala noted once that Brown was having difficulty standing and walking, but otherwise reported few abnormal findings. Dr. Chappel analyzed her MRIs and determined that her brain and lumbar spine were normal. Dr. Clement assessed her fibromyalgia, but reported normal findings otherwise. And although she was diagnosed as having a goiter, Dr. Miller did not believe the goiter was causing her symptoms. Indeed, with the exception of surgery for her carpal tunnel syndrome, her doctors primarily recommended conservative treatments -- like prescription medications, physical therapy, and diet and exercise. What's more, her treatments in 2013 -- including epidural shots, medications, ice, heat, and immobilization -- appeared to provide her with relief, and her doctors adjusted her prescriptions during that time to address their side effects. Finally, Brown herself said in her evaluation at Hope Counseling Center and at her hearing that she was still able to engage in a range of activities, despite the pain her conditions caused. On this record, the ALJ's determination that Brown's symptoms did not limit her capacity for work to the extent she claimed was supported by substantial evidence. See 20 C.F.R. § 404.1529(c)(1)-(4); Moore, 405 F.3d at 1211.

We are also unpersuaded by Brown's claim that the ALJ failed to properly address her diagnoses for IBS and GERD in his opinion and when making his RFC determination. The social security regulations outline a five-step, sequential evaluation process to determine whether a claimant is disabled. See 20 C.F.R. §

404.1520(a)(4). The ALJ must evaluate whether: (1) the claimant engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the severe impairment meets or equals an impairment in the Listing of Impairments; (4) the claimant has the RFC to perform past relevant work; and (5) in light of the claimant's RFC, age, education, and work experience, there are other jobs the claimant can perform. Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If the ALJ determines that the claimant is not disabled at any step of the evaluation process, the inquiry ends. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

If a claimant alleges several impairments, the Commissioner must consider the impairments in combination to decide whether the combined impairments render her disabled. Jones v. Dep't of Health & Human Servs., 941 F.2d 1529, 1533 (11th Cir. 1991). This duty applies even when the impairments considered separately are not severe. Hudson v. Heckler, 755 F.2d 781, 785 n.2 (11th Cir. 1985). An ALJ's statement that the claimant did not have an impairment or combination of impairments that rendered her disabled constitutes evidence that he considered the combined effects of her impairments. Wilson v. Barnhart, 284 F.3d 1219, 1224 (11th Cir. 2002).

When performing the five-step sequential evaluation process in this case, the ALJ did not err in failing to assign a specific level of severity to Brown's IBS and

GERD.  Under the regulations, once the ALJ proceeded beyond Step Two of the sequential evaluation, he did not need to specify the severity of each of Brown's individual impairments.  See 20 C.F.R § 404.1520(a)(4).  Rather, the ALJ was required to consider all her impairments -- severe or non-severe -- in combination.  See Hudson, 755 F.2d at 785 n.2.  In making his RFC determination, the ALJ noted that Brown testified to having IBS and GERD; she visited a gastrointestinal specialist with reports of abdominal pain; the specialist diagnosed her with GERD, IBS, and gastritis; and she was prescribed antibiotics and a high fiber diet.  Thus, as the record indicates, the ALJ sufficiently addressed Brown's medical records and the ultimate RFC determination was supported by substantial evidence.  Moreover, nothing in the record suggested that Brown's IBS or GERD had any significant limiting effects on her functional capacity beyond causing some abdominal discomfort.  Thus, the ALJ properly assessed Brown's IBS and GERD diagnoses, and did not err in making his RFC determination.

Finally, we reject Brown's claim that the ALJ erred in his evaluation process by not adopting the vocational expert's response to a hypothetical question describing a person who would be frequently off task and absent from work.  In performing the five-step, sequential evaluation process, an examiner who concludes that a claimant is unable to do past relevant work must then proceed to the "final step of the evaluation process to determine whether in light of 'residual

10

functional capacity,' age, education, and work experience the claimant can perform other work." Wilson, 284 F.3d at 1227. The ALJ may determine whether the claimant has the ability to adjust to other work in the national economy by use of a vocational expert. Winschel, 631 F.3d at 1180. "[F]or a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." Id. (quotation omitted). "The hypothetical need only include the claimant's impairments, not each and every symptom of the claimant." Ingram v. Comm'r of Soc. Sec., 496 F.3d 1253, 1270 (11th Cir. 2007) (quotation and citation omitted). The ALJ need not include findings in the hypothetical that the ALJ found to be unsupported. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1161 (11th Cir. 2004).

Here, after determining that she could not perform her past relevant work, the ALJ, as required, moved to the fifth step of the sequential evaluation to determine whether other jobs existed for her. In the hearing, the ALJ's first hypothetical to the VE described an individual who performed light work except with frequent pushing and pulling using the upper extremities and occasional postural movements. Based on a review of Brown's medical records, the ALJ determined that Brown's RFC was the same as the individual described in the first hypothetical, and as we've said, that RFC was supported by substantial evidence. In addition, the VE's response to the first hypothetical constituted substantial

11

evidence of Brown's ability to work.  See <u>Winschel</u>, 631 F.3d at 1180.  As for

Brown's claim that her impairments would cause her to be absent and off task in

excess of employer tolerances, there is no support in the record for this claim.  As a

result, the ALJ was not required to rely on the VE's response to the fourth

hypothetical.  See <u>Crawford</u>, 363 F.3d at 1161.  In short, the ALJ did not err in

determining that jobs existed in the national economy that Brown could perform.

     **AFFIRMED**.