RESOLUTION TRUST CORPORATION, an agency of the USA, Plaintiff–Counter Defendant, Cross Defendant–Appellant, Cross Appellee,

Duval Federal Savings Assoc., Plaintiff,

v.

HALLMARK BUILDERS, INC., a Florida corporation, Defendant–Counterclaim Plaintiff, Crossclaim Plaintiff–Appellee, Cross Appellant,

Ronald D. Nutt, Defendant Counterclaim Plaintiff–Appellee, Cross–Appellant,

J.C. Concrete & Masonry, Schilke Enterprises, Inc., a Florida corporation, J.A. Brown, Pence South Brevard Sewer & Septic Tanks, Inc., a Florida corp., Comfort Makers, Inc., a Florida corporation, William G. Gregory d/b/a American Paint Brush & East Coast Plumbing Co., Inc., John W. Hursey, Mary A. Hursey, Rinker Materials Corporation, a Florida corporation, East Coast Lumber & Supply Company, a Florida corporation, Defendants.

No. 92–2410.

United States Court of Appeals, Eleventh Circuit.

Aug. 4, 1993.

Adam G. Adams, III, Julie Hills Tucker, Jacksonville, FL, for appellant.

David Hillingsworth Simmons, Elizabeth G. Stevens, Drage, De Beaubien, Knight & Simmons, Orlando, FL, for Hallmark Builders, Inc.

Before COX, Circuit Judge, MORGAN and HENDERSON, Senior Circuit Judges.

PER CURIAM:

Both the Resolution Trust Corporation ("RTC"), the appellant and cross appellee, and Hallmark Builders, Inc. ("Hallmark") and Ronald D. Nutt, its president, the appellees and cross appellants, appeal from the judgment of the United States District Court for the Middle District of Florida awarding attorney fees to RTC in the aftermath of its successful suit against Hallmark and Nutt. The matter of attorney fees was referred by the district court to a United States magistrate for a report and recommendation. The magistrate found that the number of hours and the hourly rates claimed by RTC's attorneys were reasonable, and used those figures to calculate a lodestar amount. He then found that there was no basis in the governing precedent for enhancing or reducing that lodestar figure. Nevertheless, the magistrate recommended that RTC be compensated for less than the lodestar, because the total amount was excessive when viewed against the final judgment. The district court adopted the report and recommendation.

We conclude that the magistrate and the district court, in adopting his recommendation, erred when it reduced the fee award after finding that the lodestar components were reasonable and RTC was completely successful on all its claims.

## I. BACKGROUND

### A. The Underlying Suit

RTC prevailed in an action against Hallmark and Nutt to collect on two loans made by Duval Federal Savings and Loan Association ("Duval"), RTC's predecessor in interest. Duval had made the two loans for the construction of two homes being built by Hallmark. The notes were secured by mortgag-

es on the property and Nutt, as Hallmark's president, personally guaranteed the notes executed in November 1983.

Hallmark defaulted on the notes and then filed for bankruptcy protection, pursuant to 11 U.S.C.A. §§ 1101 *et seq.*, identifying Duval as a secured creditor. In its petition to the bankruptcy court, Hallmark never disputed the validity of the indebtedness to Duval or its status as a secured creditor. In its final plan of reorganization, Hallmark agreed to repay the Duval notes in equal installments over a period of three years, but it failed to make any of the payments.

Duval filed suit in November 1986 in Florida circuit court to collect on the notes and foreclose on the underlying mortgages. In the defense of the state court action and contrary to its position in the bankruptcy court, Hallmark denied liability and asserted twenty affirmative defenses and three counterclaims.

Before the trial, RTC was appointed receiver of Duval, was subsequently substituted as a party plaintiff in the state court litigation and then removed the case to the United States District Court for the Middle District of Florida. By that time Hallmark had already paid to Duval the $54,000.00 principal on the first loan, but no interest or attorney fees. The accrued interest on that loan was $22,794.89. Hallmark had also paid $75,000.00 on the second loan, leaving the attorney fees and $8,848.23 in principal unpaid. These amounts totalling $129,000.00 were paid to Duval after suit was filed against both defendants. RTC was seeking only the remaining $31,643.12, plus interest, costs and fees by the time the case reached federal court.

RTC and the defendants, Hallmark and Nutt, filed motions for summary judgment before trial in federal court. The district court heard the cross motions and resolved all issues in favor of RTC on the merits and entered a final judgment for RTC for $50,741.22. That was the amount remaining unpaid on the loans, plus additional accrued interest and costs. The court retained jurisdiction to award reasonable attorney fees to which RTC and its predecessor, Duval, were entitled under their contract with Hallmark and Nutt.

*B. RTC's Motion for Attorney Fees*

■ RTC filed its motion seeking approximately $145,000.00 in attorney fees. The district court assigned the motion to a magistrate for a report and recommendation. The magistrate concluded that RTC was entitled to reasonable attorney fees under the original contract with Hallmark and Nutt and proceeded to conduct a lodestar analysis to determine the amount of those fees. A lodestar is calculated by multiplying the number of hours reasonably spent times a reasonable hourly rate. *E.g., Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565, 106 S.Ct. 3088, 3098, 92 L.Ed.2d 439, 456 (1986).

The magistrate first considered the reasonable hourly rate component of the lodestar. He found that, with one exception, the rates requested for each of RTC's attorneys were reasonable. In that one instance, the charge found to be unreasonable was reduced to a lesser amount. (Rept. & Rec. at 19).

Next, the magistrate found that the expended number of hours requested by RTC's attorneys was reasonable. He found that the hours were necessary in part because the defendants' counterclaims and affirmative defenses introduced a level of complexity into this mortgage foreclosure/note collection action that otherwise would not have been present. Because RTC had to prevail on each of the three counterclaims and twenty affirmative defenses before it could collect on the notes, the magistrate recommended that RTC's lawyers should be compensated for that time. (Rept. & Rec. at 22).

The same law firm represented Duval when it was a party to the litigation and then entered into a separate agreement with RTC after it was appointed receiver. The magistrate found that the firm reasonably spent 630 hours on the case before RTC's appointment, for which it had been paid by Duval, and 455.5 hours after RTC's appointment, for which it had not yet received compensation.

After determining that the hours spent and rates claimed were reasonable, the magistrate calculated the lodestar figure to be $147,131.00—$95,492.00 of which was attributable to the period before RTC's takeover and $51,639.00 of which was for the period after its appointment. (Rept. & Rec. at 22–23). The magistrate then found that no enhancement to the lodestar was appropriate because the results were not exceptional and that no reduction could be made because RTC was completely successful on all its claims. He also rejected the defendants' arguments that the lodestar must ·be adjusted downward because the fees were out of proportion to the final judgment and that such high fees were not contemplated by the parties when the notes totalling $103,000.00 were executed by the defendants.

The magistrate then reasoned that even though the lodestar components were reasonable and the total was not subject to any adjustments supported by precedent, the fee was excessive, in violation of the Rules Regulating the Florida Bar.[1] He therefore applied his own "billing judgment" to the lodestar of $147,131.00 and reduced the award to $60,431.30. He arrived at this amount by reducing the pre-RTC appointment fee by 50% and awarding only 25% of the final judgment amount as fees for the period after RTC's appointment. That latter amount was the most RTC would be liable to pay from its own resources, under its contract with the firm, if the reasonable fees awarded by the court were *less* than that sum.

The magistrate granted the parties ten days to object to the report and recommendation. Under the terms of the order, failure to object would act as a bar to attacking the factual findings on appeal.[2] RTC filed its objections to the report, but Hallmark and Nutt did not object. The district court then approved and adopted the magistrate's report and recommendation. RTC appealed to this court and Hallmark and Nutt filed their cross-appeals.

## II. ISSUES

RTC's main assignment of error is the reduction of the lodestar amount because the court found it excessive after explicitly determining that the components were reasonable and not subject to ·reduction.

In their cross-appeal Hallmark and Nutt argue 1) RTC is not entitled to recover the attorney fees paid by Duval to its lawyers before RTC was substituted in this action and 2) the district court compensated RTC's lawyers for an unreasonable number of hours at unreasonably high rates.

## III. DISCUSSION

### A. Entitlement to Fees & Applicable Law

■ The mortgages and notes executed in favor of Duval by Hallmark and Nutt specifically provide that

All parties liable for the payment of this note agree to pay the holder hereof a reasonable attorneys fee for the services of counsel employed after maturity or default to collect this note, or to protect or enforce the security thereof, whether or not suit be brought.

In determining the fees to which the payees are entitled, we look to the law of the state in which the security instruments were executed. *Cf. McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1487 (5th Cir.1990). Our task is simplified in this case because Florida follows the lodestar approach as developed by federal case law. *Standard Guar. Ins. Co. v. Quanstrom*, 555 So.2d 828 (Fla.1990); *Florida Patient's Compensation Fund v. Rowe*, 472 So.2d 1145 (Fla.1985).

---

1. The magistrate made this determination based only on the $50,741.22 final judgment, not on the $179,741.22 Hallmark and Nutt paid Duval and RTC once Duval filed suit. We need not consider whether the magistrate erred by failing to consider the larger, as opposed to the smaller, amount because we find that the analysis itself was flawed.

2. In his report and recommendation, the magistrate cautioned:

    Failure to file written objection to the proposed findings and recommendations contained in this report within ten (10) days of the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal. (Rept. & Rec. at 27). *See* 28 U.S.C.A. § 636(b)(1) (West Supp.1993).

## B. Reasonable Hours

■ The first step in a lodestar analysis is to establish the reasonable number of hours for which the prevailing party's attorneys are entitled to compensation. At that point, and before the attorneys submit their fee request, they must exercise their own billing judgment to exclude any hours that are "excessive, redundant, or otherwise unnecessary." *Hensley v. Eckerhart,* 461 U.S. 424, 434, 103 S.Ct. 1933, 1939–40, 76 L.Ed.2d 40, 51 (1983). Any hours the attorneys would not bill to their client may not be charged to their adversary. *Id.*

■ The district court found that all the hours the law firm claimed were reasonably expended in the litigation. Hallmark and Nutt make several challenges on appeal to the magistrate's finding that the hours were reasonable. However, all those arguments are now barred because they failed to object to those factual findings, despite the notice by the magistrate that such failure would bar them from attacking the findings on appeal. When the magistrate provides such notice and a party still fails to object to the findings of fact and those findings are adopted by the district court the party may not challenge them on appeal in the absence of plain error or manifest injustice. *Henley v. Johnson,* 885 F.2d 790, 794 (11th Cir.1989); *LoConte v. Dugger,* 847 F.2d 745, 749–50 (11th Cir.), *cert. denied,* 488 U.S. 958, 109 S.Ct. 397, 102 L.Ed.2d 386 (1988). A finding that the number of hours employed in pursuit of the litigation was reasonable is a question of fact subject to this rule. *See, e.g., Riverside v. Rivera,* 477 U.S. 561, 572, 583–84, 106 S.Ct. 2686, 2693, 2698–99, 91 L.Ed.2d 466, 478, 485–86 (1986) (plurality and Powell, J., concurring); *Blum v. Stenson,* 465 U.S. 886, 892 n. 5, 104 S.Ct. 1541, 1545 n. 5, 79 L.Ed.2d 891, 897 n. 5 (1984). The court's finding of fact that the hours spent were reasonable simply does not rise to the level of plain error or manifest injustice so as to excuse Hallmark and Nutt's failure to object. We may not reverse that finding.

## C. Reasonable Hourly Rate

The magistrate then determined the reasonable hourly rates for the firm's services based on the evidence before it. Again, Hallmark and Nutt did not object to these findings in the district court, but do complain now. After a careful review of all the evidence before the magistrate we simply do not find plain error or manifest injustice so as to overturn that finding.

## D. Reduction of Lodestar

■ The magistrate next found that no reduction of the lodestar was warranted under the controlling case law. In particular, the court found that RTC was completely successful, foreclosing the need for a reduction. *See Hensley v. Eckerhart,* 461 U.S. at, 434–35, 103 S.Ct. at 1940, 76 L.Ed.2d at 51–52. However, despite this finding that no reduction in the lodestar amount could be made, he nevertheless held that the total award should be reduced because it was excessive. At that point, he exercised his own billing judgment to arrive at a fee he determined reasonable.

While we can understand the urge to find a better formula to equate the reasonable charges with the final recovery for the client, the magistrate here erred as a matter of law in reaching that goal. He utilized the billing judgment rule as the vehicle by which he could limit a fee he had earlier found to be based on reasonable lodestar components. As explained above, however, the billing judgment rule is a device by which the lawyers and courts determine a reasonable number of hours for which the prevailing party's attorneys may be compensated. Because the magistrate found, as a factual matter, that all the hours for which the firm sought compensation were reasonable, the firm necessarily exercised proper billing judgment. *Riverside v. Rivera,* 477 U.S. at 569 n. 4, 106 S.Ct. at 2692 n. 4, 91 L.Ed.2d at 476 n. 4. It is inconsistent for a court to find on the one hand that a law firm seeks compensation only for a reasonable number of hours, but then turn around and find it did not exercise appropriate billing judgment. *See id.*

■ The reason for this rule is apparent from the cases that have developed the principles to guide the courts in making fee awards. The lodestar approach was con-

ceived and is favored because it lends a degree of objectivity and certainty for the assessment of proper fees. *See Burlington v. Dague*, 505 U.S. ——, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992). A lodestar figure that is based upon a reasonable number of hours spent on a case multiplied by a reasonable hourly rate is itself strongly presumed to be reasonable. *Id.* at ——, 112 S.Ct. at 2641, 120 L.Ed.2d at 456. Consequently, the courts have severely limited the instances in which a lawfully found lodestar amount may be adjusted to a higher or lower level.

■ When the hours and rate are reasonable, a downward adjustment to a lodestar is merited only if the prevailing party was partially successful in its efforts. *Hensley v. Eckerhart*, 461 U.S. at 434–36, 103 S.Ct. at 1940–41, 76 L.Ed.2d at 51–52. The magistrate expressly found to the contrary here. If the fees awarded in this case are excessive it is because one or both of the lodestar factors are unreasonable. However, we may not address that question on appeal because Hallmark and Nutt did not object to the factual findings of reasonableness in the district court.

### E. Additional Issues

■ Hallmark and Nutt raise three other assignments of error that deserve mention. First, they argue that RTC is not entitled to recover fees paid by Duval before RTC was appointed receiver of the failed savings and loan association. They maintain that the firm has an administrative claim against RTC for the services it provided to Duval, but that it may not recover its fees from these defendants. *See FDIC v. Shain, Schaffer & Rafanello*, 944 F.2d 129 (3d Cir. 1991). That argument misses the point. The magistrate found that Duval had already paid the law firm all the fees to which it was entitled before RTC took over its operation. RTC stepped into the shoes of Duval and is clearly entitled to reimbursement of the fees Duval paid the attorneys, both under the terms of the contracts and by statute.[3] 12 U.S.C.A. § 1821(d)(2)(A) (West 1989 & Supp. 1993);[4] *see also Dunn v. Sentry Ins.*, 462 So.2d 107 (Fla. 5th DCA 1985) (recovery for attorney fees is based on indemnity principles).

■ Next, Hallmark and Nutt contend that it is not fair to award fees for the work performed in defending against the counterclaims and affirmative defenses because they were all abrogated by the *D'Oench, Duhme* doctrine and 12 U.S.C.A. § 1823(e) (West 1989 & Supp.1993).[5] We do not consider this argument, in part because it is factually incorrect and also because it is barred by a failure to object to the findings of the magistrate. In its order granting summary judgment in favor of RTC, the district court addressed most of the affirmative defenses and counterclaims and denied them on the merits. Hallmark and Nutt's point is essentially that the hours Duval's lawyers spent on those defenses should not be considered hours reasonably spent attempting to recover on the notes. This argument is specious.

■ Finally, Hallmark and Nutt claim that RTC's recovery for fees should be limited to 25% of the final judgment. They assert that RTC's fee contract with its attor-

---

3. The magistrate found that because the case had lasted a number of years RTC was entitled to recover fees at current reasonable rates to compensate RTC and its attorneys for the lost time value of money. (Rept. & Rec. at 7). *See Norman v. Housing Auth.*, 836 F.2d 1292, 1302 (11th Cir.1988). Hallmark and Nutt do not challenge that application of *Norman* to this case.

4. When RTC was appointed receiver of Duval, it became successor to "all rights, titles, powers, and privileges of the insured depository institution, and of any stockholder, member, accountholder, depositor, officer, or director of such institution with respect to the institution and the assets of the institution." 12 U.S.C.A. § 1821(d)(2)(A)(i) (West 1989 & Supp.1993).

5. In *D'Oench, Duhme & Co. v. FDIC*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942), the Supreme Court protected federal banking authorities from secret agreements made between borrowers and failed banks. Section 1823(e) "expands *D'Oench, Duhme* in that it applies to any agreement, whether or not it was 'secret,' and regardless of the maker's participation in a scheme. At the same time, however, that statute is narrower than *D'Oench, Duhme* in that it applies only to agreements, and not to other defenses the borrower might raise." *RTC v. Wellington Dev. Group*, 761 F.Supp. 731, 735 (D.Colo.1991) (emphasis omitted); *accord Vernon v. RTC*, 907 F.2d 1101, 1105–06 (11th Cir. 1990).

neys imposes such a limitation. The contract provides that RTC would pay the firm:

> [T]he greater of (a) 25% of the amount recovered (including principal, interest, and attorneys' fees) plus costs, or (b) the amount awarded by the court as a reasonable fee for services rendered since the time of RTC's receivership through completion of the action plus costs.

The district court correctly found that Florida law permits the reasonable fee to exceed 25% of the recovery. (Rept. & Rec. at 14–15). *Florida Patient's Compensation Fund v. Moxley*, 557 So.2d 863 (Fla.1990); *Pendley v. Shands Teaching Hosp. & Clinics, Inc.*, 577 So.2d 642 (Fla. 1st DCA 1991); *Tampa Bay Publications, Inc. v. Watkins*, 549 So.2d 745 (Fla. 2d DCA 1989).

## IV. CONCLUSION

The district court erred when it reduced the fee award after finding that each component of the lodestar analysis was reasonable and that there was no legal basis in the controlling case law for adjusting that amount. There is no plain error or manifest injustice sufficient to overturn the findings of reasonableness in the absence of a timely objection from Hallmark and Nutt. We reverse the judgment of the district court and remand for it to award attorney fees in the lodestar amount it previously calculated, without reductions.

REVERSED and REMANDED WITH INSTRUCTIONS.

COX, Circuit Judge, specially concurring:

I concur in the judgment. I also join the opinion except for part III D. addressing reduction of the lodestar. While I do not agree with all that the court says, I think the result is correct.

We know why the district court reduced the lodestar amount. We should, in my view, review the merits of that reduction and not reverse simply on the ground that such a reduction should have been made before the lodestar amount was determined rather than afterwards. If that were the magistrate judge's only error it would be an error of form rather than substance. On the merits,

however, I conclude that the reasons articulated by the magistrate judge do not support the reduction. I therefore concur in the result reached by the majority.