Tracy JACKSON, Plaintiff,

v.

Michael J. ASTRUE, Commissioner of Social Security, Defendant.

Case No. 10–24131–CIV.

United States District Court, S.D. Florida.

July 19, 2011.

Adam Scott Neidenberg, Adam Neidenberg, PA, Fort Lauderdale, FL, for Plaintiff.

Lawrence Nathan Rosen, United States Attorney's Office, Miami, FL, for Defendant.

***ORDER ADOPTING REPORT & RECOMMENDATION OF MAGISTRATE JUDGE (D.E. 24), DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (D.E. 20), GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (D.E. 21), AND AFFIRMING COMMISSIONER'S DECISION***

JOAN A. LENARD, District Judge.

**THIS CAUSE** is before the Court on the Report and Recommendation of the Magistrate Judge ("Report," D.E. 24), issued on June 30, 2011, recommending that the Court: (1) deny Plaintiff's Motion for Summary Judgment (D.E. 20); (2) grant Defendant's Motion for Summary Judgment (D.E. 21); and (3) affirm the Commissioner's decision. Specifically, the Magistrate Judge determined the ALJ's finding that Plaintiff was not disabled was supported by substantial evidence and the correct legal standards were applied. The Report provides the Parties with fourteen (14) days to file objections. To date, neither side has filed any objections to the Report. Failure to timely file objections shall bar parties from attacking on appeal the factual findings contained in the report. *See Resolution Trust Corp. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir.1993). Therefore, after an independent review of the Report and record, it is hereby **ORDERED AND ADJUDGED** that:

1. Consistent with this Order, the Report of the Magistrate Judge (D.E. 24), issued on June 30, 2011, is **ADOPTED;**

2. Plaintiff's Motion for Summary Judgment (D.E. 20), filed on April 28, 2011, is **DENIED;**

3. Defendant's Motion for Summary Judgment (D.E. 21), filed on May 31, 2011, is **GRANTED;**

4. The ALJ's November 25, 2009, decision is **AFFIRMED;**

5. All other pending motions are **DENIED AS MOOT;**

6. This case is now **CLOSED.**

**DONE AND ORDERED.**

## *REPORT AND RECOMMENDATION*

ROBERT L. DUBÉ, United States Magistrate Judge.

THIS CAUSE is before this Court on the Motion for Summary Judgment filed by the Plaintiff (D.E. # 20) and the Motion for Summary Judgment filed by the Defendant (D.E. # 21) pursuant to a Clerk's Notice of Magistrate Judge Assignment entered by the Clerk of Court, United States District Court for the Southern District of Florida. The issue before the Court is whether the record contains substantial evidence to support the denial of benefits to the Plaintiff, Tracy Jackson (hereinafter "Jackson" or "Plaintiff").

### I. *FACTS*

The Plaintiff filed an application for disability insurance benefits on November 13, 2006, which asserted disability as of April 1, 2004. (R. 144–148).[1] The application was denied initially and on reconsideration. (R. 94–99, 103–105). Following a hearing on September 4, 2009 (R. 35–89), the Administrative Law Judge (hereinafter "ALJ") issued a decision denying the request for benefits. (R. 11–34). The Plaintiff requested a review of the ALJ decision (R. 8) and the Appeals Council granted request for review (R. 139–143), then issued an unfavorable decision. (R. 1–7).

The Plaintiff, age 48 at the time of the hearing on September 4, 2009, testified she last worked in July 2006. (R. 40). Counsel for the Plaintiff noted Jackson had earned $2,756.00 in 2006, $2,449.99 in 2005 and $716.94 in 2004. Jackson asserted she worked for "[o]nly a few months" in 2006 delivering small plants and flowers. The Plaintiff stated she "drove around" and delivered flowers until she suffered a seizure and stopped working. (R. 41).

Prior to 2006, the Plaintiff testified she worked at Casey Landscaping, Inc. for a few months answering phones, but left "[b]ecause it got to be too far for [her] to go back and forth with [her] seizure episode stuff." Jackson asserted prior to her employment at Casey Landscaping, she worked at Galloway Diner as a waitress and server for "maybe a year if that." (R. 42). The Plaintiff further testified she worked at the Roadhouse Grill as a waitress, from 1994 until 1998 "on and off." Jackson asserted she had also worked at Snowden's Corner, Inc., as a waitress and had not been employed for pay or performed any volunteer work after 2006. (R. 43).

Jackson testified her limitations included forgetfulness and the inability to lift heavy objects. The Plaintiff further asserted her husband cooked for their household; she did not go to the grocery store unless her husband went with her; and she did not drive because of her seizures. The ALJ asked the Plaintiff whether her seizures have become worse since 2006 and the Plaintiff stated, "They've gotten worse as far as the spacing out and everything. I haven't, like I said, I haven't had any grand mals in a long time but the, yeah,

---

**1.** All references are to the record of the administrative proceeding filed as part of the Defendant's answer.

mild petite ones have gotten worse, gotten longer." Jackson asserted she experienced "mild petite" seizures every day. (R. 44).

Jackson testified the medication she was currently taking at the time of the hearing included Depakote, Meloxicam, Lyrica, Detrol, Mobic and Boniva; all of which were paid by her husband's insurance. The Plaintiff further testified she experienced relief from her symptoms because she was taking medication; she was unaware of any side effects; she was compliant with her medication and no other type of treatment had been recommended to her. (R. 45).

Jackson stated she recently underwent carpal tunnel surgery and attested that two of her fingers on her right hand were still numb, and she had pain in her wrist. Additionally, Jackson stated that her right foot hurt "when it cramps up" and her right leg, hands and arms were "always cramping up." (R. 46). According to the Plaintiff, the pain lasted for a "couple of minutes or so," and the pain was exacerbated by the change of seasons, specifically cold or rainy weather. (R. 47).

Jackson asserted apart from the medication and surgery she mentioned, she had not taken any other measures to relieve the pain or symptoms and she had been treated by Dr. Karen Raben every 3 to 4 months since 1999 or 2000. (R. 47). The Plaintiff testified Dr. Raben referred her to Dr. Richard Chang for arthritis whom she saw every three months; Dr. Gallo treated her one or twice a year; and Dr. Schiff treated her once or twice a year for her liver. (R. 48).

According to Jackson, at the time of the hearing she did not drink or use drugs and the last time she had alcohol was when she "was a teenager or younger." (R. 48).[2] The Plaintiff stated she was married, had one child, lived in a one-level home, and arrived at the hearing by "special transportation." (R. 48–49). The Plaintiff described her typical day as getting up at 7:30 a.m., having coffee, doing "a little bit of the housework," making the bed, watching television, going outside to feed the fish, and doing "a couple of things." Jackson stated that her husband cooked dinner and did the laundry. (R. 49–50). Jackson testified she went to bed at 9:00 or 10:00 p.m. and did not have trouble sleeping. (R. 50).

Additionally, the Plaintiff asserted she spoke to her relatives on the telephone and socialized with a few friends. (R. 50). The Plaintiff further asserted she was not involved in any social activities and did not use a computer, except for playing solitaire and checking her emails. (R. 50–51). Apart from the discontinuation of Hepatitis C medication, the Plaintiff testified she experienced no changes in medication prescribed. (R. 51).

According to the Plaintiff, she could stand for 15 to 20 minutes before her foot started hurting, but was unsure of how far she could walk because "it's been too hot." (R. 51–52). Jackson stated she could lift approximately 5 pounds and the heaviest thing she had carried was a 5 to 10 bag of potatoes; had no pushing or pulling limitations; was right-handed; and could not bend, stoop, or crouch for "that long." (R. 52). Jackson asserted she had no limitations in reaching in all directions; did not use an assistive device to walk, and had no limitations with her fingers "except for the two that are numb on the top." Jackson stated she experienced "wheezing" while breathing and used to smoke until "a cou-

---

**2.** On July 2, 2006, Dr. Raben noted in an evaluation that Jackson drank 2 to 3 Bacardi Low–Carb Coolers per night. (R. 689).

ple weeks ago." The Plaintiff claimed she did not have any problems with her vision or hearing, but used tri-focal glasses. Jackson also claimed she is able to independently take a shower. (R. 53).

The ALJ noted the Plaintiff had applied for Social Security benefits in 1987 and 1997 with an alleged onset date of disability of 1993. The Plaintiff responded that in the past, the basis for her applications had been seizures. Jackson testified she had been consistently employed from 1997 through 2003, and 2005 through 2007. (R. 54). Jackson further asserted she had been involved in 2 motorcycle accidents; the first accident occurred in 1981 and the second in 1997. (R. 54–55). The Plaintiff attested her seizures began in either 1979 or 1980, prior to the first motorcycle accident. (R. 55). The Plaintiff testified that in her second motorcycle accident, she sustained head trauma and her orbital eye, 5 ribs, right thumb and right foot had been crushed. Jackson stated she experienced 5 to 7 petite mal seizures per day, which lasted 2 seconds to "maybe a minute if that," despite the medication prescribed. (R. 55–56).

In addition, the Plaintiff testified she was diagnosed with Hepatitis C in 2005. (R. 56). The Plaintiff indicated her physician discontinued the medication for treatment of Hepatitis C and as a result, her liver results were elevated. (R. 56). Jackson also testified she was scheduled to take a new medication which was not available at the time for the hearing. (R. 56–57). Jackson asserted she was "tired all the time" due to her diagnosis and it made her "feel a little low" for 5 to 6 hours each day, but she tried to take an hour nap during the day. Jackson stated her diagnosis of arthritis made it difficult for her to get things done around the house and explained her husband had to help her with making the bed. (R. 57). Jackson also

noted she was prescribed medication for bladder control. (R. 58).

Dr. Allan Selbst, a specialist in internal medicine, was duly sworn in as a medical expert witness for the Plaintiff. (R. 58–59). Dr. Selbst testified that the Plaintiff had the following impairments: significant fatigue, arthritis, arthralgias, seizure disorder, skin rashes exacerbated by the sun secondary to ortheria panius carta, and carpal tunnel syndrome. Additionally, Dr. Selbst noted the record contained references to the Plaintiff's arthralgias and arthritis secondary to osteoarthritis as well as manifestations of Hepatitis C. The medical expert stated the Plaintiff's diagnosis of Hepatitis C was "untreatable" and she had been treated with failed antiviral trials in 2005 and 2006. (R. 62).

Dr. Selbst further testified he had reviewed her "viral loads" and stated they were getting higher and higher throughout 2008 because of her lack of treatment. (R. 64–65). As a result, the medical expert testified she was developing extra manifestations of Hepatitis C, specifically arthralgias and fatigue. The medical expert cited to EEG reports confirming the Plaintiff's diagnosis of seizure disorder. (R. 65). Additionally, Dr. Selbst indicated the Plaintiff was treated by Dr. Chang for arthritis, athralgias secondary to osteoarthritis and Hepatitis C with anti-inflammatory drugs such as Lyrica and Mobic. (R. 66). Dr. Selbst stated that although the Plaintiff did not meet or equal any listing, the medical record supported her subjective complaints. (R. 66).

According to Dr. Selbst, the Plaintiff could sit for 45 minutes to an hour; stand for 20 to 30 minutes; stand/walk under 2 hours in an 8–hour day; sit for a total of 4 hours in an 8–hour day; lift 10 pounds or less occasionally; no limitations were noted with fine manipulation except some numbness of the right hand; no limitations

on reaching; and could "probably" stoop, crouch or kneel occasionally. (R. 67–68).

The ALJ asked if the medical expert agreed with the parameters set forth by Dr. Chang. (R. 70). The parameters included sitting/standing for 30 minutes; standing for 15 minutes total; sitting/standing/walking for a total of 2 hours; and sitting between 2 to 3 hours. Dr. Selbst agreed with Dr. Chang's assessment, however, he testified the Plaintiff could "probably sit a little bit longer and stand a little bit longer." The medical expert agreed the Plaintiff would need to take unscheduled breaks during the day including periods of walking for 20 minutes every 4 hours. (R. 70).

Dr. Selbst denied offering an opinion with regard to the Plaintiff's mental state, stating he was not a psychiatrist or psychologist, however, he testified the medication prescribed for antidepressants was consistent with treatment of depression. (R. 70–71). Dr. Selbst also indicated the cognitive impairment and closed-head injuries were consistent with depression. (R. 71).

Counsel for the Plaintiff asked how many days the Plaintiff would be out of work due to symptoms or impairments, to which the medical expert responded more than 4 days a month. (R. 71). When asked about the examinations performed by Dr. Merlot, the expert testified that the medical records of Dr. Merlot did not indicate that a "thorough review of [the Plaintiff's] systems asking her about her symptomatology" had been performed. (R. 72).

Mr. Gary Fannin testified as a vocational expert. (R. 73). The vocational expert identified the region that the claimant lived in consisted of 4 counties; Miami–Dade, Broward, Monroe County and Palm Beach Counties. (R. 74). Mr. Fannin described the Plaintiff's past relevant work over the previous 25 years to include the following: waitress, DOT # 311.477–030,

light with an SVP of 3, light; deliverer, DOT # 299.477–010, medium with an SVP of 2 (based on the Plaintiff's testimony and the way the Plaintiff performed the job, Mr. Fannin testified the exertional level was either light or light/medium); receptionist, DOT # 237.367–038, sedentary with an SVP of 4 (based on how the Plaintiff performed it, Mr. Fannin testified the skill level was an SVP of 2); and hostess DOT # 352.667–010, light with an SVP 3. (R. 75–79).

The ALJ posed the following hypothetical to the medical expert:

> Assume a hypothetical claimant of the same age, education, and work experience as this claimant. Also assume that I find that such a hypothetical claimant can perform the exertional demands of light as defined in the regulations with the following additional limits; occasional climbing of ramps and stairs, never climbing of ladders, or no exposure to unprotected heights, occasional balancing. Just one second. Occasional balancing. Okay. No other limitations. Would such a hypothetical claimant be able to perform claimant's past work?

(R. 79).

The expert asserted such a hypothetical claimant would be able to perform the claimant's past work. Next, the ALJ posed a second hypothetical:

> Assume the same hypothetical claimant with the limitations identified in hypothetical one. Additional limitations that such a hypothetical claimant could perform the basic demands of unskilled work: That is can understand, remember, and carry out short, simple instructions, respond appropriately to supervision, interact appropriately with coworkers, and respond appropriately to changes in a routine work setting. Do you have an opinion as to whether

such a hypothetical claimant could perform claimant's past work? (R. 79). The ALJ added the additional limitations that the hypothetical claimant would only be able to perform the mental demands of unskilled work and jobs that did not involve driving. The medical expert testified the hypothetical claimant would not be able to perform any of her past relevant work based upon the limitations imposed by the second hypothetical. (R. 80).

The ALJ amended the first hypothetical to include limitations on driving which eliminated the hypothetical claimant's ability to perform past relevant work as a deliverer with regard to the limitations imposed by the first hypothetical. (R. 81).

Based upon the limitations of the second hypothetical, Mr. Fannin testified said individual would not be able to perform the Plaintiff's past relevant work but would be able to perform work as a cashier, DOT # 211.462–010, light with an SVP of 2 (100,000 jobs nationwide; 13,000 jobs statewide; and 3,000 jobs in the regional area); ticket seller, DOT # 211.467–030, light with an SVP of 2 (100,000 jobs nationwide; 10,000 jobs statewide; and 2,000 jobs in the regional area); and sales attendant, DOT # 299.677–010, light with an SVP 2 (200,000 jobs nationwide; 8,000 jobs statewide; and 3,000 jobs in the regional area). The vocational expert asserted such figures were representative, due to the existence of many unskilled, light positions in the job market. (R. 81–83).

The ALJ asked the third hypothetical: Assuming the same mental limitations identified in hypothetical two and the same unskilled work. The hypothetical [claimant can] perform unskilled work and also assume that such a hypothetical person can perform the exertional demands of sedentary.

. . .

No exposure to unprotected heights; never climbing ramps or, occasional climbing of ramps and stairs; no climbing of ropes and scaffolds; occasional balancing; and of course jobs that doesn't involve any driving. (R. 83–84).

The ALJ asked the vocational expert whether other work existed that the hypothetical claimant could perform. The vocational expert testified that said individual would be able to perform work as a food and beverage order clerk, DOT # 209.567–014, sedentary with an SVP of 2 (23,000 jobs nationally, 1,600 jobs statewide, and 300 to 400 jobs in the regional area); a callout operator, DOT # 237.367–014, sedentary with an SVP of 2 (16,000–17,000 jobs nationwide, 1,000 jobs statewide, and 300 jobs in the regional area); and a charge account clerk, DOT # 205.367–014, sedentary with an SVP of 2 (37,000–38,000 jobs nationwide, 1,000 jobs statewide, and 300 jobs in the regional area). The vocational expert testified the list was almost fairly exhaustive but represented, to a significant extent, the number of jobs located in the region. (R. 84–85).

The vocational expert testified the exertional and skill levels of the jobs enumerated were consistent with the Dictionary of Occupational Titles with the exception of the way in which the Plaintiff performed her past relevant work as a florist delivery person. (R. 85). The vocational expert testified such work could be considered between medium and light depending on the merchandise being delivered. (R. 85). Additionally, Mr. Fannin attested that the Plaintiff's job as an office receptionist was classified as a light exertional job because she had to take people around the facility which required her to be on her feet. (R. 86).

Counsel for the Plaintiff asked the vocational expert to consider Dr. Raben's Re-

sidual Functional Capacity assessment. The vocational expert testified the RFC included limitations that the Plaintiff could sit for 30 minutes, stand for 10 minutes, and stand/walk a total of between 2 to 3 hours. Mr. Fannin noted the RFC indicated an exertion level of less than sedentary and the lifting was less than sedentary. (R. 88). Lastly, the vocational expert testified that missing more than 4 days due to Hepatitis C would not allow the Plaintiff to sustain her past relevant work. (R. 88–89).

In addition to the testimony presented at the hearing, medical records were submitted to the ALJ. However, a review of the medical records and the specific issues raised by the Plaintiff in her Motion for Summary Judgment shows the resolution of the issues do not require this Court to specifically set out all the medical evidence in detail. Accordingly, this Court will discuss the legal issues involved and will incorporate the facts as appropriate within the arguments presented below.

After a hearing and review of the record, the ALJ issued an opinion finding that the Plaintiff had severe impairments of epilepsy, organic mental disorder and an affective disorder, carpal tunnel syndrome by history, hepatitis C and early osteoporosis. However, the ALJ determined that the Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments. (R. 16). The ALJ further determined that the Plaintiff had the residual functional capacity to perform light work. (R. 18). The ALJ also determined that the Plaintiff was unable to perform any of her past relevant work but considering the Plaintiff's age, education, work experience, and residual functional capacity, the ALJ found there were a significant number of jobs that existed in the national economy that the Plaintiff could perform. (R. 27).

The ALJ concluded that the Plaintiff was not disabled. (R. 28).

## II. LEGAL ANALYSIS

Judicial review of the factual findings in disability cases is limited to determining whether the record contains substantial evidence to support the ALJ's findings and whether the correct legal standards were applied. 42 U.S.C. section 405(g); *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Kelley v. Apfel,* 185 F.3d 1211, 1213 (11th Cir. 1999); *Martin v. Sullivan,* 894 F.2d 1520, 1529 (11th Cir.1990). "Substantial evidence" is more than a scintilla, but less than a preponderance and is generally defined as such relevant evidence which a reasonable mind would accept as adequate to support a conclusion. *Lewis v. Callahan,* 125 F.3d 1436, 1440 (11th Cir.1997).

■ In determining whether substantial evidence exists, the court must scrutinize the record in its entirety, taking into account evidence favorable as well as unfavorable to the Commissioner's decision. *Foote v. Chater,* 67 F.3d 1553, 1560 (11th Cir.1995); *Lamb v. Bowen,* 847 F.2d 698, 701 (11th Cir.1988). The reviewing court must also be satisfied that the decision of the Commissioner correctly applied the appropriate legal standards. *See, Bridges v. Bowen,* 815 F.2d 622, 624 (11th Cir.1987). The court may not reweigh evidence or substitute its judgment for that of the ALJ, and even if the evidence preponderates against the Commissioner's decision, the reviewing court must affirm if the decision is supported by substantial evidence. *See, Barnes v. Sullivan,* 932 F.2d 1356, 1358 (11th Cir.1991); *Baker v. Sullivan,* 880 F.2d 319, 321 (11th Cir.1989).

■ The restrictive standard of review set out above applies only to findings of fact. No presumption of validity attaches to the conclusions of law found by the

Commissioner, including the determination of the proper standard to be applied in reviewing claims. *Brown v. Sullivan,* 921 F.2d 1233, 1236 (11th Cir.1991); *Martin v. Sullivan,* 894 F.2d 1520, 1529 (11th Cir. 1990). The failure by the Commissioner to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal. *Cornelius v. Sullivan,* 936 F.2d 1143, 1145–1146 (11th Cir.1991); *See also, Wiggins v. Schweiker,* 679 F.2d 1387, 1389 (11th Cir.1982).

Social Security regulations establish a five-step sequential analysis to arrive at a final determination of disability. *See,* 20 C.F.R. section 404.1520; 20 C.F.R. section 416.920(a)-(f).

The ALJ must first determine whether the claimant is presently employed. If so, a finding of non-disability is made, and the inquiry ends. 20 C.F.R. section 404.1520(b). In the second step, the ALJ must determine whether the claimant suffers from a severe impairment or combination of impairments. If such a finding is not made, then a finding of non-disability results, and the inquiry ends. 20 C.F.R. section 404.1520(c).

At step three, the ALJ compares the claimant's severe impairments to those in the listing of impairments. 20 C.F.R. section 404.1520(d), subpart P, appendix I. Certain impairments are so severe, whether considered alone or in conjunction with other impairments, that if such impairments are established, the regulations require a finding of disability without further inquiry into the claimant's ability to perform other work. *See, Gibson v. Heckler,* 762 F.2d 1516, 1518, n. 1 (11th Cir.1985). If the impairment meets or equals a listed impairment, disability is presumed, and benefits are awarded. 20 C.F.R. section 404.1520(d).

Step four involves a determination of whether the impairments prevent the claimant from performing his or her past relevant work. If the claimant cannot perform his or her past relevant work, then a prima facie case of disability is established and the burden of going forward with the evidence shifts to the Commissioner to show, at step five, that there is other work available in the national economy which the claimant can perform. 20 C.F.R. section 404.1520(e)-(f).

■ The claimant bears the initial burden of proving that he is unable to perform previous work. *See, Barnes v. Sullivan,* 932 F.2d 1356, 1359 (11th Cir.1991). The inability to perform previous work relates to the type of work performed, not to merely a specific prior job. *See, Jackson v. Bowen,* 801 F.2d 1291, 1293 (11th Cir. 1986).

The Plaintiff's first point of contention is that the ALJ failed to consider whether the Plaintiff met the requirements of Listing 12.05C with regard to mental retardation. Additionally, the Plaintiff argues she met the Listing requirements on the basis that she had a valid I.Q. score and the presence of other significant impairments.

The Eleventh Circuit reviewed listing impairments and stated as follows:

The Listing of Impairments describes, for each of the major body systems, impairments which are considered severe enough to prevent a person from doing any gainful activity. *See* 20 C.F.R. § 404.1525(a). Part A of the Listing of Impairments contains medical criteria that apply to adults age 18 and over. *See* 20 C.F.R. § 404.1525(b); *see also* 20 C.F.R. § 404, Subpt. P, App. 1. To "meet" a Listing, a claimant must have a diagnosis included in the Listings and must provide medical reports documenting that the conditions meet the specific criteria of the Listings and the

duration requirement. *Id.* 20 C.F.R. § 404.1525(a)-(d). To "equal" a Listing, the medical findings must be 'at least equal in severity and duration to the listed findings.' *See* 20 C.F.R. § 404.1526(a). If a claimant has more than one impairment, and none meets or equals a listed impairment, the Commissioner reviews the impairments' symptoms, signs, and laboratory findings to determine whether the combination is medically equal to any listed impairment.

*Wilson v. Barnhart*, 284 F.3d 1219 (11th Cir.2002). While the ALJ must consider whether a claimant meets a listing, the ALJ need not mechanically recite that a claimant does not meet a listing in his decision, as this fact may be implied from the record. *Hutchison v. Bowen*, 787 F.2d 1461, 1463 (11th Cir.1986). In order to meet listing 12.05C, a Plaintiff must demonstrate:

> 12.05 Mental retardation: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> A. Mental incapacity evidenced by dependence upon others for personal needs (e.g., toileting, eating, dressing, or bathing) and inability to follow directions, such that the use of standardized measures of intellectual functioning is precluded;
>
> OR
>
> B. A valid verbal, performance, or full scale IQ of 59 or less;
>
> OR
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function;
>
> OR
>
> D. A valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following:
>
> 1. Marked restriction of activities of daily living; or
>
> 2. Marked difficulties in maintaining social functioning; or
>
> 3. Marked difficulties in maintaining concentration, persistence, or pace; or
>
> 4. Repeated episodes of decompensation, each of extended duration.

As noted by the Plaintiff, while the ALJ did not specifically cite to Listing 12.05C, the ALJ indicated that a review of the Listing of Impairments was conducted. (R. 16–17). The ALJ stated, in pertinent part, as follows:

> I have carefully reviewed the Listing of Impairments, in particular Sections 5.00 for Disorders of the Digestive System; 11.00 for Neurological impairments; 12.00 Mental Disorder and 14.00 for Disorder of the Immune system disorders. While the claimant has at times presented some of the signs and symptoms associated with the above Sections, not all of their specific requirements have been documented throughout the period in question in order to meet or equal any of them.

(R. 16–17).

■ The Court finds that the ALJ the correctly reviewed the Listing requirements. The ALJ was not obligated to specifically recite the listing requirements for mental retardation, however, she indicated in her decision that the Listing requirements for mental disorders had been reviewed and the Plaintiff failed to meet or equal them. The Court finds that the ALJ

did not err in specifically citing to the Listing requirements of 12.05C.

■ Additionally, there is no evidence demonstrating that the Plaintiff met the aforementioned Listing requirements. There is no record of a mental impairment prior to the Plaintiff attaining 22 years of age. Moreover, while Paul A. Feria, Ph. D., Licensed Clinical Psychologist, tested the Plaintiff and found her to have a Full Scale I.Q. score of 64, a Verbal I.Q. of 66, and a Performance I.Q. of 69, Dr. Feria did not diagnose the Plaintiff with mental retardation; rather, the Plaintiff was diagnosed with Borderline Intellectual Functioning. (R. 273, 275).

A second evaluation by Mayra M. Miro, Psy.D, Licensed Clinical Psychologist, found the Plaintiff "seemed to exaggerate the overall presentation of cognitive impairment." (R. 309). Jackson was diagnosed with mild cognitive disorder not otherwise specified, and like Dr. Feria, Dr. Miro did not diagnose Jackson with mental retardation. (R. 311). The Plaintiff must "have a diagnosed condition that is included in the listing and provide objective medical reports documenting that this condition meets the specific criteria of the applicable listing and the duration requirement." *Wilkinson on Behalf of Wilkinson v. Bowen,* 847 F.2d 660, 662 (11th Cir. 1987).

While Jackson asserted she met the Listing criteria, she failed to present a diagnosis of mental retardation before or after the age of 22 and despite the presence of a valid I.Q., there were no objective medical reports to further support her assertion.

This Court also notes that the Eleventh Circuit has held, "... that a valid I.Q. score need not be conclusive of mental retardation where the I.Q. score is inconsistent with other evidence in the record on the claimant's daily activities and behavior." *Lowery v. Sullivan,* 979 F.2d

835, 837 (11th Cir.1992), *citing to, Popp v. Heckler,* 779 F.2d 1497, 1499 (11th Cir. 1986). Accordingly, it is the opinion of this Court that the ALJ did not err in finding that the Plaintiff did not meet or equal a listing impairment.

■ The Plaintiff's second point of contention is that the ALJ erred in failing to incorporate the limitations caused by the diagnosis of Carpal Tunnel Syndrome into a determination of the Plaintiff's RFC.

The RFC is an assessment which is based upon all of the relevant evidence of a claimant's remaining ability to do work despite his impairments. *Lewis v. Callahan,* 125 F.3d 1436, 1440 (11th Cir.1997), citing, 20 C.F.R. § 404.1545(a). "The RFC assessment must first identify the individual's functional limitations or restrictions and assess ... her work-related abilities on a function by function basis ... Only after that may RFC be expressed in terms of exertional levels of work, sedentary, light, medium, heavy, and very heavy." *Freeman v. Barnhart,* 220 Fed. Appx. 957, 960 (11th Cir.2007).

> The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c) and (d) of 20 C.F.R. § 404.1545 and § 416.945. Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy.

SSR 96–8p (4).

In the instant case, the ALJ went through all the evidence of record prior to making her final RFC determination. The ALJ properly reviewed the medical records, including testimony from Dr. Selbst and records from Drs. Feria, Toledo, Meruelo, Miro, State Agency Physicians, Raben, Schiff, Chang, and Small (R. 58–72, 272–276, 264–271, 277–281, 314–320, 321–

328, 458–536, 593–600, 659–697, 543–544, 557–569, 636–638, 655–658, 644–649). With regard to the Plaintiff's diagnosis of Carpal Tunnel Syndrome, the ALJ gave significant weight to the opinion of the State Agency Physicians that noted the Plaintiff's "carpal tunnel syndrome showed no present clinical findings, as her dexterity is good and there is no upper extremity atrophy." (R. 25, 322). Additionally, the ALJ cited to the testimony of Dr. Selbst who testified that the Plaintiff was "able to use her hands for fine manipulation, except for occasional numbness in the third and fourth fingers on her right hand." (R. 24, 68).

Additionally, the ALJ evaluated the Plaintiff's testimony with regard to determining her credibility. Specifically, the ALJ stated as follows:

> She alleges disabling symptoms based on allegations of carpal tunnel syndrome, but her activities, such as playing solitaire on the computer and her use of fingers and hands as well as objective testing and the opinion of her own medical expert suggest that her symptoms are not as disabling as alleged ... I do not find the claimant entirely credible, and any opinion based on her self-report is equally unpersuasive.

(R. 19).

After said evaluation, the ALJ determined the Plaintiff could perform light work. (R. 18). Jackson could perform work that involved lifting, carrying, pushing and pulling 20 pounds occasionally and 10 pounds frequently. As the ALJ based her decision on all the evidence of the record, it is this Court's opinion that the ALJ's determination regarding the Plaintiff's residual functional capacity, is supported by substantial evidence.

The Plaintiff's third point of contention is that the ALJ erred in giving little weight to the opinion of the treating physicians Raben, Chang and Selbst. Specif-

ically, the Plaintiff cited to the Mental Capacity Assessment and Residual Functional Capacity Questionnaire completed by Dr. Karen Raben on April 3, 2009. (R. 593–599). Dr. Raben asserted, in the Mental Capacity Assessment, that based upon the Plaintiff's diagnosis of Porphyria, Hepatitis C, seizures, memory loss and Carpal Tunnel Syndrome, as well as an examination of the Plaintiff, her emotional capabilities were affected by mental impairments. (R. 593). Such noted limitations included moderated to extreme limitations in sustained concentration and persistence; moderate to marked limitations in social interaction; and moderate to marked limitations in adaptation. (R. 593–594).

On the same day, Dr. Raben completed a Residual Functional Capacity Questionnaire and gave the Plaintiff a "poor" prognosis noting the Plaintiff had a limited ability to sit for 30 minutes, stand for 10 minutes, and would require time spent sitting in a recliner or lying down each day. (R. 597). Jackson was limited in grasping objects, fine manipulation and reach with her hands, fingers and arms; could not stoop, crouch, kneel or climb stairs; and her impairments were expected to last at least 12 months. (R. 597–598).

The ALJ cited to the Dr. Raben's findings and stated the following:

> In a mental capacity assessment dated April 3, 2009, Dr. Raben opined that the claimant has no useful ability to function in the area of maintaining concentration and persistence. She opined that the claimant had marked limitations in all but two areas of social interaction and adaptation. In a physical capacity assessment dated the same day, Dr. Raben opined that the claimant could perform less than sedentary work. Specifically, she opined that the claimant could sit for no more than 30 min-

utes and stand for no more than 10 minutes at one time and would need to sit in a recliner or lie down each day. She opined that the claimant could stand and walk for less than two hours and sit between 2 and 3 hours in an 8 hour day, can only occasionally lift and carry up to 9 pounds and can never stoop, crouch, kneel or climb stairs. . . . There is no support for these severe physical limitations in Dr. Raben's contemporaneous records through the date of the opinion. . . . As to her mental assessment, it appears that that doctor's opinion appears to rest at least in part on an assessment of an impairment(s) outside the doctor's area of expertise. Further, there is no evidence that the claimant received psychiatric treatment and she reported to a consulting source that she has never received treatment for a mental impairment. Her opinion of the claimant's exertional limitations is also inconsistent with the objective medical evidence of record, particularly her contemporaneous treatment notes and objective evidence obtained after her opinion. She never placed any limitations on the claimant during her course of treatment and her reports fail to reveal the type of significant clinical and laboratory abnormalities that one would expect if the claimant were in fact disabled, and the doctor did not specifically address this weakness.

(R. 24–25) (citations omitted).

■ The opinion of a treating physician is entitled to substantial weight unless good cause exists for not heeding the treating physician's diagnosis. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). Good cause has been seen when the treating doctor's opinion was not bolstered by the evidence; the evidence supported a contrary finding or the opinion was conclusory or inconsistent with the physician's own medical records. A treating physician's opinion may be disregarded

if it is unsupported by the objective medical evidence or is merely conclusory. *Johns v. Bowen*, 821 F.2d 551, 555 (11th Cir.1987).

■ The ALJ's determination of affording less weight to the opinion of Dr. Raben is supported by the medical record as the physical limitations imposed upon the Plaintiff by the physician were not consistent with the physician's own treatment notes. (R. 458–536, 664–697). Dr. Raben documented in 2005 that Jackson was traveling to Alabama and no physical limitations were noted. (R. 476). Further, in 2006, a review of the Plaintiff's systems found her to be physically stable with the exception of a "smoker's cough" and a notation that she smoked a pack and a half daily and had done so for 30 years. (R. 688–689). The absence of any physical or mental limitations in Dr. Raben's progress treatment notes gave the ALJ adequate grounds for correctly affording less weight to Dr. Raben's opinion.

Additionally, after reviewing the Residual Functional Capacity Questionnaire completed by Dr. Richard Chang in August 2009 (R. 656–658), the ALJ determined as follows:

. . . Dr. Chang has limited the claimant to less than sedentary work activity without supporting objective clinical findings or laboratory diagnostic techniques. Such limitation is inconsistent with his contemporaneous treatment notes in which he never placed any restrictions on the claimant's activities during the entire course of treatment. The assessment is also inconsistent with the claimant's activities of daily living and other substantial evidence of record.

(R. 24).

■ Much like the opinion of Dr. Raben, the opinion of Dr. Chang was afforded less weight due to inconsistencies between

the physician's evaluation of the Plaintiff's limitations and his own treatment notes. Dr. Chang limited the Plaintiff to sitting for 30 minutes, standing for 10 to 15 minutes, and taking unscheduled breaks every half-hour. (R. 656–657). The Plaintiff was noted by Dr. Chang to have significant limitations in doing repetitive reaching, handling or fingering; an inability to use her hands, fingers, or arms for reaching, grasping, or fine manipulation; and was unable to stoop, crouch, kneel or climb stairs. (R. 657). As noted by the ALJ, the physical limitations contained within the questionnaire were not documented in the treatment notes and there is no other record of Dr. Chang determining such physical limitations were required.

Lastly, the ALJ determined the following with regard to the opinion of Dr. Selbst:

> After carefully considering Dr. Selbst's testimony, I find that although his opinion regarding the claimant's diagnosed impairments are supported by the medical evidence of record, his assessment as to their severity are not consistent with the substantial evidence of record.

(R. 20).

■ The ALJ cited to inconsistencies relating to the severity of the Plaintiff's diagnosis of Hepatitis C, liver results, and x-ray reports of the lumbar spine and back. (R. 20). The ALJ cited to an evaluation of Jackson performed by Dr. Eugene R. Schiff, M.D., M.A.C.P., Chief of Hepatology at the University of Miami Hospitals and Clinics. (R. 551–553). Dr. Schiff evaluated the Plaintiff and diagnosed her with "relatively mild" Chronic Hepatitis C as well as "relatively mild" liver disease. (R. 552). Additionally, a radiology report, performed on July 24, 2008 (R. 540–541), indicated the Plaintiff's liver and gallbladder were normal (R. 541) and an x-ray of Jackson's lumbar spine conducted on August 19, 2009, classified the Plaintiff to be

in the normal range with no increased risk of fracture. (R. 661–663).

■ The opinion of a non-examining reviewing physician is entitled to little weight and, taken alone, does not constitute substantial evidence to support an administrative decision. *Swindle v. Sullivan,* 914 F.2d 222, 226 n. 3 (11th Cir.1990). The ALJ properly considered the opinion of Dr. Selbst and limited the medical expert's opinion on the basis that his opinion regarding the severity of the Plaintiff's impairments was not supported by the evidence of record.

The ALJ is only required to adopt findings which are consistent with other evidence in the record. 20 C.F.R. § 416.927(d)(4). Here, such consistency with the other evidence and with the opinions of Drs. Raben, Chang and Selbst are lacking. Accordingly, for the aforementioned reasons the Court finds no error is present with regard to the weight provided to the opinions of the physicians.

### III. *CONCLUSION AND RECOMMENDATION*

Based on the foregoing, this Court finds that the decision of the ALJ was supported by substantial evidence and that the correct legal standards were applied. Therefore, it is the recommendation of this Court that the decision of the Commissioner be **AFFIRMED**. Accordingly, the Motion for Summary Judgment filed by the Plaintiff (D.E. # 20) should be **DENIED** and the Motion for Summary Judgment filed by the Defendant (D.E. # 21) should be **GRANTED**.

Pursuant to Local Magistrate Rule 4(b), the parties have fourteen (14) days from service of this Report and Recommendation within which to serve and file written objections, if any, with the Honorable Joan A. Lenard, United States District Judge.

Failure to file objections timely shall bar the parties from attacking on appeal the factual findings contained herein. *Lo-Conte v. Dugger,* 847 F.2d 745 (11th Cir. 1988), *cert. denied,* 488 U.S. 958, 109 S.Ct. 397, 102 L.Ed.2d 386 (1988); *R.T.C. v. Hallmark Builders, Inc.,* 996 F.2d 1144, 1149 (11th Cir.1993).

**DONE AND ORDERED** this 30th day of June, 2011.