[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-14606
Non-Argument Calendar

_____

D.C. Docket No. 4:18-cv-00190-MJF

MELANIE TREDIK,

Plaintiff - Appellant,

versus

COMMISSIONER OF THE SOCIAL
SECURITY ADMINISTRATION,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

(September 11, 2020)

Before WILSON, JILL PRYOR and BLACK, Circuit Judges.

PER CURIAM:

Melanie Tredik appeals the district court's order affirming the Commissioner of the Social Security Administration's decision to deny her application for a period of disability and disability insurance benefits, pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).  Tredik contends (1) substantial evidence does not support the Administrative Law Judge's (ALJ) decision to afford little weight to Dr. Karl Willers's opinion of her work restrictions while giving some weight to Dr. Billings Fuess's opinion; (2) the ALJ applied improper legal standards and reached a conclusion unsupported by substantial evidence in affording little weight to a letter from Tredik's former employer, Vicki Wood, about Tredik's work performance; and (3) the ALJ reached a conclusion unsupported by substantial evidence in determining that Tredik's subjective symptom complaints were not credible.  After review,[1] we affirm the Commissioner's decision.

---

[1] We review a Social Security case to determine whether the Commissioner's decision is supported by substantial evidence, but we review *de novo* whether the correct legal standards were applied. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).  If, in light of the record as a whole, substantial evidence supports the Commissioner's decision, we will not disturb it. *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997).  Under this standard of review, we will not decide the facts anew, make credibility determinations, or re-weigh the evidence. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011).

## I.  DISCUSSION

### A.  *Weight given to the opinions of Dr. Willers and Dr. Fuess*

At step four of the sequential analysis,[2] the ALJ must determine a claimant's residual functional capacity (RFC) by considering all relevant medical and other evidence.  *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004).  The ALJ must "state with particularity the weight given to different medical opinions and the reasons therefor."  *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011).  An ALJ considers many factors when weighing medical opinion evidence, including the examining relationship, the treatment relationship, whether an opinion is well-supported, and whether an opinion is consistent with the record. 20 C.F.R. §§ 404.1527(c), 416.927(c).

The opinions of non-treating examiners are not entitled to deference or consideration.  *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987).  Generally, more weight is given to the opinion of an examining physician than to a non-examining physician, and a non-examining physician's opinion, on its own, does

---

[2]  The Social Security regulations outline a five-step process the ALJ must use to determine whether a claimant is disabled:  (1) whether she is engaged in substantial gainful activity; (2) whether she has a severe impairment or combination of impairments; (3) whether that impairment or combination of impairments meets or equals the listings in 20 C.F.R. § 404, Subpart P; (4) whether she can perform her past relevant work in light of her residual functional capacity; and (5) whether, based on her age, education, and work experience, she can perform other work found in the national economy.  *Winschel*, 631 F.3d at 1178; 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v).

not constitute substantial evidence.  20 C.F.R. § 404.1527(c)(1); *Swindle v. Sullivan*, 914 F.2d 222, 226 n.3 (11th Cir. 1990).

After review, we conclude substantial evidence supports the ALJ's decision to give little weight to examining physician Dr. Willers's[3] opinion and some weight to non-examining physician Dr. Fuess's[4] opinion.

*1.  Dr. Willers*

Substantial evidence supports the ALJ's determination to give little weight to Dr. Willers's opinion.  The ALJ discounted Dr. Willers's opinion because it was not supported by, and instead was inconsistent with, the record evidence through the date last insured.  The ALJ's determination was a proper application of the legal standard and supported by substantial evidence.  *See Payne v. Weinberger*, 480 F.2d 1006, 1007-08 (5th Cir. 1973)[5] (explaining a medical consultant's post-insurance-date opinion can be considered to the extent that it confirms an inference that can be drawn from medical evidence from before the date last insured).

---

[3]  Dr. Willers evaluated Tredik based on an interview with her and a review of her records.

[4] Dr. Fuess completed medical interrogatories, based on a review of Tredik's medical evidence, at the behest of the ALJ.

[5]  In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), this Court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to close of business on September 30, 1981.

The burden was on Tredik to present evidence establishing she was disabled on account of her mental health impairments on or before March 31, 2009. *See Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (explaining the burden is on the claimant to establish that she was disabled on or before the date last insured). Dr. Willers's opinion of Tredik's ability to function in 2009 was based on inferences drawn from evaluations conducted over six years after the date last insured. Thus, the weight due to his opinions depended on the extent to which they were corroborated and were consistent with his notes and the evidence of Tredik's mental health on or before March 31, 2009. *See Payne*, 480 F.2d at 1007-08.

Dr. Willers opined that Tredik could not adequately: (1) remember work-like procedures; (2) maintain regular attendance and be punctual; (3) sustain a routine without special supervision; (4) work in coordination with or in proximity to others without being distracted; (5) complete a normal workday without interruption; (6) perform at a consistent pace without an unreasonable number of rest periods; (7) get along with coworkers or peers without distracting them or exhibiting extreme behavior; (8) respond appropriately to changes in routine; (9) deal with normal work stress; (10) maintain attention for two hours at a time; (11) make simple work-related decisions; and (12) accept instruction and respond appropriately to criticism.

Many of these opinions were not corroborated by the medical evidence from the relevant time period. For example, there was no mention of Tredik suffering from memory problems in any of the medical evidence. The only evidence of Tredik having difficulties understanding instructions and remembering her duties came from Tredik's testimony at the ALJ hearing, Tredik's interview with Dr. Willers, and Wood's letter referring to Tredik's work performance after the date last insured. In the absence of any corroborating medical evidence through the date last insured, Dr. Willers's opinion of Tredik's memory appeared to be based solely on Tredik's subjective complaint of memory problems and difficulty understanding instructions, which cannot serve as the sole basis for a medical opinion. *See Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004) (holding substantial evidence supported the ALJ's decision to discount a treating physician's opinion because it was inconsistent with his treatment notes, unsupported by the medical evidence, and appeared to be based primarily on the claimant's subjective complaints). Moreover, Dr. Willers's opinion of Tredik's memory was inconsistent with his own observation of Tredik that she presented good memory.

Willers's opinion regarding Tredik's attendance and punctuality is also uncorroborated by the evidence. Tredik did not attribute any of her difficulties obtaining or retaining a job due to an inability to be punctual and maintain regular

6

attendance; rather, she reported the reason for losing her previous jobs was communication issues. Dr. Willers's opinion on this issue is also inconsistent with Tredik's ability to sustain her employment with the Agency for Healthcare Administration (AHA) for 4 years. While she held that position years before the date last insured, she testified that her symptoms were present back in 2001.

Dr. Willers's opinion regarding her need for special supervision is also inconsistent with the record. Tredik never mentioned a need for special supervision in any of her treatment records through the date last insured. She told her treating physician, Dr. Paul Zislis, after the date last insured, that she could not keep up with her job duties because of her symptoms. She also testified that she had been fired due to her need for assistance at AHA. However, despite these problems, she was able to keep her position at Dillard's without issues regarding supervision. She was also able to obtain an A in her 2009 general chemistry class, which she did not attribute to external assistance.

As for distractibility and inability to pay attention for more than two hours, the only corroborating evidence was Tredik's own subjective complaint to Dr. Willers during her evaluation, which cannot form the basis of a medical opinion. *See Crawford*, 363 F.3d at 1159.

There was evidence indicating Tredik had difficult completing a workday without interruption and handling stress, but the evidence did not suggest they

7

were as severe as Dr. Willers opined.  Specifically, Tredik testified she had severe anxiety when going to work, which necessitated trips to the bathroom, and her anxiety impeded her ability to understand what was being told to her.  She also testified she sometimes had to call in sick due to her depression.  However, she never indicated she had to leave work because of her symptoms.

As for Tredik's need to take rest periods, she testified her anxiety-induced need to go to the bathroom was present while she worked at Dillard's and AHA.  However, she never indicated she took an unreasonable amount of these breaks or that they adversely affected her work performance, as she did not attribute her loss of employment to her need to take breaks.

Dr. Willers's opinion of the severity of Tredik's ability to get along with others without distracting them or exhibiting extreme behavior also lacks evidentiary support.  Tredik could only recall one instance in which a coworker complained that Tredik had been asking too many questions.  The only extreme behavior Tredik exhibited was going to the bathroom for an occasional timeout and becoming afraid and upset because her coworker complained at one time.  While Wood stated in her letter that Tredik was extremely upset several times over interactions with staff members, the letter refers to employment after the date last insured and moreover, did not show that Tredik could not get along with her coworkers.

8

Dr. Willers's opinion regarding Tredik's ability to respond to change appears to be based solely upon her experience working at Westminster Oaks, as no other evidence mentions difficulty adapting to nonroutine tasks. While that difficulty existed after the date last insured, there is no evidence of similar difficulty existing on or before the date last insured.

Tredik's ability to respond to criticism appears to be seriously limited. She testified that while working at AHA, she became upset, shaken, anxious, and afraid when the supervisor expressed that he could not understand her inability to retain simple information. She also testified she got scared and resigned from Dillard's when she was told to increase her sales. The degree to which her response to criticism affected her employment, however, was not clearly established. In the case of Dillard's, she resigned because she did not believe herself capable of increasing her sales. In the case of AHA, she either resigned because she anticipated being fired, was asked to leave for being in a prohibited part of the building, was asked to leave for her need for instruction, or she resigned because she anticipated more monitoring. Dr. Willers's opinion regarding Tredik's ability to make simple work-related decisions was already incorporated into the RFC, as she was limited to only simple, routine, and repetitive tasks.

The above discussion illustrates the majority of Dr. Willers's opinions were unsupported by the medical record and primarily based on Tredik's subjective

complaints, such that the logical trail from Willers's opinion to the relevant date was not apparent.  Dr. Willers could not point to any particular medical record to support his opinion, nor did he cite any in his reports.  Because Dr. Willers's opinions were retrospective, unsupported by the record through the date last insured, inadequately supported, and primarily based on Tredik's subjective complaints, substantial evidence supported the ALJ's decision to discount his opinions.  *See* 20 C.F.R. §§ 404.1527(c), 416.927(c); *Crawford*, 363 F.3d at 1159; *Payne*, 480 F.2d at 1007-08.

### *B.  Dr. Fuess*

Turning to Dr. Fuess, the ALJ credited his opinion as to whether Tredik was capable of performing routine, repetitive tasks through the date last insured.  Dr. Fuess did not cite to any specific evidence to support that finding.  However, he cited supporting evidence for his determination that Tredik's mental impairments did not limit her ability to understand and carry out simple instructions.  *See* 20 C.F.R. § 404.1527(c)(3) (providing due to the lack of a treatment relationship with the claimant, the weight due to a non-examining physician's opinion will depend on the degree to which the physician provides supporting explanations for his opinions and the degree to which the opinion considers all pertinent evidence).  Dr. Fuess cited the improvement in Tredik's Global Assessment Functioning (GAF) scores and notes indicating her cognitive function was grossly intact.  Tredik had a

GAF score of 70 as of May 2008, less than a year before the date last insured, indicating that she only had mild symptoms. While Tredik argues her cognitive capacity was unrelated to her ability to function, she cites no medical or legal authority to support that proposition. While Tredik argues that Dr. Fuess failed to consider evidence that her condition improved between January and December 2009, the date last insured was March 2009. The evidence from January 2009 through the date last insured was limited to Dr. Zislis's notes that Tredik reported anxiety and depression associated with her chemistry class, but she had gotten an A in that class. Further, Tredik never expressed any difficulty in performing routine tasks. Because Dr. Fuess supported his opinion regarding Tredik's ability to perform routine, repetitive tasks and was consistent with the medical evidence through the date last insured, the ALJ's decision to afford weight to that opinion was supported by substantial evidence.

*B. Weight given to letter from former employer*

The SSA may receive evidence from nonmedical sources in connection with a disability claim about any issue pertinent to that claim. 20 C.F.R. §§ 404.1513(a)(4), 416.913(a)(4). Nonmedical sources are evaluated under the same framework as medical sources, though, depending on the facts of the case, not all factors may apply. *Id.* §§ 404.1527(f)(1), 416.927(f)(1).

The ALJ applied proper standards and reached a conclusion supported by substantial evidence when the ALJ gave little weight to Wood's letter.  The ALJ applied proper legal standards because nonmedical sources are evaluated under the same framework as medical sources, such that the ALJ's observation that Wood's letter was not as detailed and supported by objective criteria as medical reports was a reasonable application of the standard.  *See id.* §§ 404.1527(c), (f)(1), 416.927(c), (f)(1).  Substantial evidence supports the ALJ's decision to give Wood's letter little weight because, as the ALJ noted, it concerns Wood's interaction with Tredik after the date last insured.  *See Moore*, 405 F.3d at 1211; *Payne*, 480 F.2d at 1007-08.

Further, Wood's observations were unsupported by the evidence.  Wood wrote that Tredik required frequent explanations on simple tasks and reminders about her job duties, and had a difficult time:  (1) understanding directions; (2) problem solving in non-routine situations; (3) maintaining composure when confronted with a new situation or when asked to do something out of the ordinary, appearing very anxious; (4) managing her time; and (5) understanding and dealing with inter-staff conflict.  There was no evidence through the date last insured indicating Tredik struggled with her memory at work.  There was only one instance in the record of a coworker complaining Tredik asked too many questions.  No evidence mentions Tredik having difficulty adapting to nonroutine tasks.  Tredik only testified to the one instance of complaints due to her questions, and

12

there was no other evidence of conflict with coworkers. While she became upset as a result, there was no indication that her anxiety symptoms were so disabling as to keep her from work. Moreover, Tredik's ability to only make simple work-related decisions was already incorporated into the RFC, as she was limited to only simple, routine, and repetitive tasks. Thus, the ALJ's decision to give Wood's letter little weight was supported by substantial evidence.

## C. Subjective symptom testimony

A claimant may establish that she has a disability through her "own testimony of pain or other subjective symptoms." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). Credibility determinations are the province of the ALJ, and we will not disturb a clearly articulated credibility finding supported by substantial evidence. *Mitchell v. Comm'r of Soc. Sec.*, 771 F.3d 780, 792 (11th Cir. 2014).

When a claimant attempts to establish disability through her own testimony concerning pain or other subjective symptoms, we apply a three-part "pain standard," which requires: (1) evidence of an underlying medical condition, and (2) either (A) objective medical evidence that confirms the severity of the alleged pain stemming from that condition, or (B) that the objectively determined medial condition is so severe that it can reasonably be expected to cause the alleged pain. *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002); *see also* 20 C.F.R.

13

§ 404.1529 (setting out standards for evaluating pain and other symptoms).  "The standard also applies to complaints of subjective conditions other than pain." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991).  "The claimant's subjective testimony supported by medical evidence that satisfies the standard is itself sufficient to support a finding of disability."  *Id.*

"After considering a claimant's complaints of pain, the ALJ may reject them as not creditable, and that determination will be reviewed for substantial evidence." *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992).  The ALJ must explicitly and adequately articulate his reasons if he discredits subjective testimony.  *Id.* "The credibility determination does not need to cite particular phrases or formulations but it cannot merely be a broad rejection which is not enough to enable . . . [us] to conclude that the ALJ considered her medical condition as a whole." *Dyer*, 395 F.3d at 1210 (quotations and alterations omitted).  When evaluating a claimant's subjective symptoms, the ALJ must consider such things as:  (1) the claimant's daily activities; (2) the nature and intensity of pain and other symptoms; (3) precipitating and aggravating factors; (4) type, dosage, and effects of medications; and (5) treatment or measures taken by the claimant for relief of symptoms.  *See* 20 C.F.R. § 404.1529(c)(3).  The fact a claimant can perform daily activities that are inconsistent with her subjective symptom complaints does not constitute substantial evidence where there is other evidence indicating her daily

14

activities have been significantly affected by her condition. *See Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995).

Substantial evidence supports the ALJ's finding that Tredik's subjective symptom complaints were not credible, as the objective medical evidence did not confirm the severity of her symptoms. Tredik testified she suffered from anxiety, suicidal ideations, panic attacks, and depression. Her anxiety caused her to have thoughts of slicing her wrists, impaired her ability to understand what she was being told, and necessitated trips to the bathroom. However, Tredik never indicated her symptoms disabled her from completing a full workday, necessitated an unreasonable number of breaks during the day, or adversely affected her work performance. Further, her medical records indicated that by May 2008, her symptoms were mild. Dr. Zislis's notes likewise reflected a decrease in her depression and anxiety symptoms through 2008. Dr. Zislis noted she reported anxiety and depression related to her chemistry class, but she was nonetheless able to obtain an A in the course despite her symptoms. He did not note symptoms of anxiety until September 2009, after the date last insured. Thus, the objective evidence does not confirm the severity of Tredik's subjective complaints. *See Wilson*, 284 F.3d at 1225.

As for her depression, Tredik testified she was sometimes too depressed to go to work and called in sick. However, she never specified the frequency with

which she had to call in sick.  And, there is no indication in the record her depression was so severe as to disable her from working, as she never attributed any of her difficulties obtaining or retaining a job due to depression.  Dr. Zislis noted her depression was stable in October 2008.  Dr. Zislis noted in May 2009, after the date last insured, she was depressed because her husband wanted her to return to work in December 2009.  Thus, the objective evidence does not confirm the severity of Tredik's other subjective complaints.  *See Wilson*, 284 F.3d at 1225.

Tredik's other arguments misunderstand the basis for the ALJ's adverse-credibility finding.  The ALJ did not cite Tredik's education, academic achievements, or daily activities as reasons for finding the severity of her symptoms were not consistent with the evidence of record, only that her impairments did not entirely foreclose her from working.  The ALJ instead relied on her "relatively innocent mental status examinations" from the relevant period, specifically the FSU records and Dr. Zislis's treatment notes.  Substantial evidence supports the ALJ's finding that Tredik's subjective symptom complaints were not credible.

## III.  CONCLUSION

First, substantial evidence supports the ALJ's determination to give little weight to Dr. Willers's opinion of Tredik's work restrictions, as the majority of his opinions were unsupported by the medical record and primarily based on Tredik's

16

subjective complaints.  Substantial evidence also supports the ALJ's decision to give some weight to another, non-examining physician's opinion of Tredik's ability to perform routine tasks because the opinion was consistent with the medical evidence through the date last insured.  Second, the ALJ applied proper standards in evaluating Wood's letter because the ALJ noted the letter was not as detailed and supported by objective criteria as medical reports, and substantial evidence supports the decision to give the letter little weight because Wood's observations were unsupported by the evidence through the date last insured.  Third, substantial evidence supports the ALJ's finding that Tredik's subjective symptom complaints were not credible, as the objective medical evidence did not confirm the severity of her symptoms.  Accordingly, we affirm.

**AFFIRMED.**